[No. B036348. Second Dist., Div. Six. Apr. 18, 1989.]

SANTA BARBARA COUNTY TAXPAYERS ASSOCIATION,
Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF SANTA BARBARA COUNTY,
Defendant and Appellant.

COUNSEL

Ronald A. Zumbrun, Anthony T. Caso, Jonathan M. Coupal and Jeffrey T. Even for Plaintiff and Appellant.

Kenneth L. Nelson, County Counsel, Marvin Levine, Acting County Counsel, Don H. Vickers and Stephen Shane Stark, Deputy County Counsel, for Defendant and Appellant.

John W. Witt, City Attorney (San Diego), Curtis M. Fitzpatrick, Assistant City Attorney, and Kirk Ah Tye as Amici Curiae on behalf of Defendant and Appellant.

OPINION

GILBERT, J.—The Santa Barbara County Taxpayers Association (TPA) poses two questions regarding county actions under article XIII B of the California Constitution: 1. May the Santa Barbara County Board of Supervisors (Board) recalculate its article XIII B base year (1978-1979) appropriations limitation using an accepted accounting method that is different from the one it originally used? Yes, it may. 2. Do franchise fees fall within the definition of " 'proceeds of taxes' " under article XIII B, section 8, subdivision (c), to be counted towards the appropriations limit? No, they do not.

FACTS

TPA filed this suit to challenge the Board's recalculation of the county's 1978-1979 base year appropriations limit under article XIII B of the

California Constitution,which is also known as Proposition 4 or as the Gann Initiative. TPA also challenges the Board's determination that franchise fees, received for the use of rights of way, do not constitute " 'proceeds of taxes' " under article XIII B, section 8, subdivision (c).

Article XIII B limits the amount of tax revenues a government entity may spend each year. Annual appropriations which are subject to limitation may not exceed an appropriations limit based on a calculated limit for fiscal year 1978-1979, adjusted annually for population and cost of living increases. (Cal. Const., art. XIII B, §§ 1, 8, subd. (h).) Appropriations subject to limitation are authorizations to spend "the proceeds of taxes levied by or for that entity . . . ." (§ 8, subd. (b).) Proceeds of taxes include, but are not restricted to, "all tax revenues and the proceeds to an entity of government, from (i) regulatory licenses, user charges, and user fees to the extent that such proceeds exceed the costs reasonably borne by such entity in providing the regulation, product, or service, and (ii) the investment of tax revenues." (§ 8, subd. (c).)

When the Board established the initial 1978-1979 appropriations limit, it used one of two standard accounting methods recommended by the County Accounting Standard and Procedures Committee to calculate that limit. The first accounting method the Board used until 1988 considers the ratio of proceeds of taxes to revenues that are not proceeds from taxes using the actual revenue obtained for the 1977-1978 fiscal year.

When the county amended its appropriations limits for 1986-1987 and for 1987-1988, it recalculated the base year appropriations limitation using the other accounting method, which the county determined to be more accurate. This second method involves analysis of specific revenue sources to ascertain which funds are proceeds of taxes and which are not.

This recalculation was precipitated by our opinion in *Santa Barbara County Taxpayers Assn.* v. *County of Santa Barbara* (1987) 194 Cal.App.3d 674 [239 Cal.Rptr. 769], which held that employer retirement contributions were subject to the limit. The instant recalculation resulted in a higher appropriations limit for 1987-1988 than would have resulted under the initial accounting method.

In recalculating the base year (1978-1979) limitation to determine the new limit, the county auditor controller reviewed the calculations previously used to determine the initial limitation. Those calculations concerned funds generated from a variety of county revenues, only some of which are proceeds of taxes. For such funds, it is necessary to distinguish which

portion of each fund is attributable to proceeds of taxes and which is not to determine the proper base appropriations limit.

Utilizing the second accounting method, the county auditor controller concluded that the county had understated amounts attributable to proceeds of taxes in both the fund balance carry-over from 1977-1978 and interest earnings from 1978-1979.

On the basis of this recalculation of proceeds of taxes for the base year, and with the inclusion of retirement contributions, the Board adjusted the 1987-1988 appropriations limit by resolution. The trial court determined the Board acted legally in this recalculation. We agree and affirm on this issue.

The court also found that franchise fees, paid for the use of rights of way, are proceeds of taxes, as defined by article XIII B, section 8, subdivision (c). We disagree and reverse on this issue. Such fees need not be included in the appropriations limit.

## DISCUSSION

 TPA asserts the recalculation is improper because it is not one of the specifically enumerated circumstances for adjusting the appropriations limit under article XIII B.

Section 1 of article XIII B states that the total appropriations subject to limitation shall not exceed the appropriations limit except as provided in article XIII B. Article XIII B enumerates certain exceptions permitting increases to the limit: 1. to reflect changes in population and inflation (§ 1), 2. to reflect transfers in responsibilities or in funding of services between entities (§ 3, subds. (a), (b)), 3. to provide for an emergency (§ 3, subd. (c)), 4. to carry out voter approval of an increase (§ 4), and 5. to comply with a court order (§ 11).

TPA argues that because recalculation is not one of these enumerated bases provided in article XIII B to increase the appropriations limit, the Board has acted illegally in doing so. TPA also claims that the doctrine of *expressio unius est exclusio alterius*—express exceptions bar exceptions not stated—precludes the Board from recalculating the base year limit. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 132 Cal.Rptr. 377 [553 P.2d 537].) We disagree. The Board's use of another proper accounting method for recalculating the appropriations limit does not constitute an exception

to article XIII B at all. Nor is it an illegal act. Rather, it is a distinct, statutorily authorized action of the Board.

Government Code section 7910 supports the determination of the Board to change its accounting method. It states, in pertinent part: "Each year the governing body of each local jurisdiction shall, by resolution, establish its appropriations limit *and make other necessary determinations . . . . The determinations made pursuant to this section are legislative acts.*" (Italics added.)

It is the Board's prerogative, as a legislative body, to alter its method of calculating the limit, provided it uses a proper accounting method to do so, as was done here. ■ "The amendment of a legislative act is itself a legislative act." (*Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 835 [323 P.2d 71], disapproved on other grounds in *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) "The power to legislate includes by necessary implication the power to amend existing legislation . . ."—in this case by a resolution changing the accounting method utilized to determine the appropriations limit. (*Ibid.*; also see *Blotter* v. *Farrell* (1954) 42 Cal.2d 804, 811 [270 P.2d 481], generally on the power of a city to make, repeal or amend ordinances; and see Gov. Code, § 25207 which enables counties to act pursuant to laws such as Gov. Code, § 7910.)

The authority to approve a change in the accounting method is distinct from the authority to approve an adjustment under the statute. Both types of actions, however, are within the Board's power. (Gov. Code, §§ 7910, 25207; *Johnston* v. *City of Claremont, supra,* 49 Cal.2d at p. 835; *Blotter* v. *Farrell, supra,* 42 Cal.2d at p. 811.)

In 1986, the voters approved county initiative Measure A which provided a 9 percent increase in the appropriations limit. In 1987, the voters rejected initiative Measure W in which the Board sought authority to raise additional funds *amounting to several million dollars.*

■ TPA contends that because a resolution is not ordinarily equivalent to an ordinance or a legislative act, such as an initiative, the electorate's passage of Measure A is paramount to the Board's resolution enabling the recalculation. This argument is faulty.

■ Legislative acts may be repealed by enactments of equal dignity. (45 Cal.Jur.3d, Municipalities, § 213, p. 333.) Here, the Board passed a resolution to amend the original resolution. ■ Although a resolution is not

ordinarily considered a legislative act, it operates as such when the resolution in substance and effect is an ordinance, and a statute expressly accords the resolution the status of a legislative act. ■ That is the situation in the instant case. Government Code section 7910 states, in pertinent part: "[T]he governing body of each local jurisdiction shall, by resolution, establish its appropriations limit and make other necessary determinations for the following fiscal year pursuant to Article XIII B . . . . The determinations made pursuant to this section are legislative acts." ■ The name attached to the act is immaterial. (See 5 McQuillin, Municipal Corporations (rev. 3d ed. 1981) § 15.02, pp. 37-39; Gov. Code, § 7910.)

■ Measure A in no way restricts the Board from altering its accounting methods nor do we think it could. ■ Our Supreme Court has stated that this state has a "policy of resolving any doubts in the scope of the initiative or referendum in a manner that avoids interference with a local legislative body's responsibilities for fiscal management." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 143 [130 Cal.Rptr. 465, 550 P.2d 1001]; also see *City of Atascadero* v. *Daly* (1982) 135 Cal.App.3d 466, 470 [185 Cal.Rptr. 228]; *Community Health Assn.* v. *Board of Supervisors* (1983) 146 Cal.App.3d 990, 993-994 [194 Cal.Rptr. 557].) ■ Such an initiative could not restrict the Board from correcting an accounting procedure to more accurately reflect revenues.

Furthermore, TPA speculates when it ascribes to the collective intent of the voters its view that the Board was precluded from changing its accounting methods because of the passage of Measure A and the defeat of Measure W.

TPA also attacks the Board's motivation for changing its accounting method and recalculating the base year limitation. ■ Courts generally are not concerned with legislative motivation. If the Legislature is empowered to enact the legislation challenged, courts will not intercede because of allegations of improper motivations. (*National Independent Business Alliance* v. *City of Beverly Hills* (1982) 128 Cal.App.3d 13, 22 [180 Cal.Rptr. 59]; *Dodge* v. *Kings County* (1906) 150 Cal. 96, 97 [88 P. 266].)

*Estoppel argument*

■ TPA argues the Board is estopped to recalculate the base year limit because the voters of Santa Barbara relied upon the original spending limits in deciding the two initiative measures. TPA is incorrect.

The parties submitted this case on the pleadings. ■ To proceed on a theory of estoppel, all essential elements of that doctrine must be alleged.

(*Smith* v. *County of Santa Barbara* (1988) 203 Cal.App.3d 1415, 1426 [251 Cal.Rptr. 1].) In *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 28 [157 Cal.Rptr. 706, 598 P.2d 866], the Supreme Court listed the essential elements of estoppel as follows: "(1) The party to be estopped must be apprised of the facts, (2) he must intend that his conduct shall be acted on, or must so act that the other party has a right to believe it was so intended, (3) the other party must be ignorant of the true state of facts, and (4) he must rely on the conduct to his injury."

■ The only allegation in the complaint remotely bearing on the instant assertion is that "Defendant's action would also have the effect of creating at least an additional $400,000 in spending authority because of the voter approved Gann override measure (Measure A). (Measure A was a voter approved adjustment to the appropriations limit specifically authorized by the Gann Amendment itself (Section 4). Because this adjustment was stated as a percentage of the existing limit, any increase in the limit will automatically magnify the effect of Measure A.)"

TPA alleged none of the elements of estoppel in its complaint. For example, TPA did not allege that Measure A, or defeated Measure W, contained language restricting the county from recalculating the base limit or that the voters relied on that language. We have grave doubts about whether such language would have been valid. (See *City of Westminster* v. *County of Orange* (1988) 204 Cal.App.3d 623, 628, 630 [251 Cal.Rptr. 511]; *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129.)

TPA's citation of *Hass* v. *City Council* (1956) 139 Cal.App.2d 73 [293 P.2d 61], is inapposite. In that case, the court gave effect to express language in an initiative which required approval by three-fourths of the voters. The initiative failed to receive the support of this supermajority, and the court upheld the determination of the city council that the measure had been defeated. (*Id.,* at p. 76.)

### Franchise fees

■ TPA contends that franchise fees, which are paid to the county for grants of rights of way, are " 'proceeds of taxes' " under article XIII B, section 8, subdivision (c) and must be included as funds subject to the appropriations limit. We disagree.

Article XIII B, section 8, subdivision (c) states, in pertinent part: " 'Proceeds of taxes' shall include, but not be restricted to, all tax revenues and the proceeds to an entity of government, from (i) regulatory licenses, user

charges, and user fees to the extent that such proceeds exceed the costs reasonably borne by such entity in providing the regulation, product, or service . . . ."

We must determine whether or not franchise fees are " 'proceeds of taxes' " within the meaning of section 8, subdivision (c). ▮▮▮ A franchise agreement is granted by a governmental agency to enable an entity to provide vital public services with some degree of permanence and stability, as in the case of franchises for utilities. (*Copt-Air* v. *City of San Diego* (1971) 15 Cal.App.3d 984, 989 [93 Cal.Rptr. 649].) Examples of franchises granted by local governments in California are gas and electric utility franchises (Pub. Util. Code, § 6001) and cable television franchises (Gov. Code, § 53066; and see Gov. Code, § 26001 which provides boards of supervisors with broad power to grant such franchises).

▮▮▮ A franchise is a grant of a possessory interest in public real property, similar to an easement. (*Pacific Tel. & Tel. Co.* v. *City & County of San Francisco* (1961) 197 Cal.App.2d 133, 154 [17 Cal.Rptr. 687]; also see *O'Sullivan* v. *Griffith* (1908) 153 Cal. 502, 505, 507 [95 P. 873], disapproved on other grounds in *Loranger* v. *Nadeau* (1932) 215 Cal. 362, 365 [10 P.2d 63, 84 A.L.R. 1264]; *City & Co. of S. F.* v. *Market St. Ry. Co.* (1937) 9 Cal.2d 743, 749 [73 P.2d 234]; 34 Cal.Jur.3d, Franchises from Government, §§ 3-5, pp. 478-481.)

A franchise is a negotiated contract between a private enterprise and a governmental entity for the long-term possession of land. Franchise fees are paid as compensation for the grant of a right of way, not for a license or tax nor for a regulatory program of supervision or inspection. (*City & Co. of S. F.* v. *Market St. Ry. Co., supra,* 9 Cal.2d at p. 749; and see *Contra Costa Co.* v. *American T. B. Co.* (1937) 10 Cal.2d 359, 361-363 [74 P.2d 749].) Regulation of most franchises is vested in the Public Utilities Commission, not in local government entities. (*County of Sacramento* v. *Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 313 [238 Cal.Rptr. 305].)

In sum, franchise fees are paid for the governmental grant of a relatively long possessory right to use land, similar to an easement or a leasehold, to provide essential services to the general public. (See *Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 966 [233 Cal.Rptr. 735]; Gov. Code, § 25530 permitting counties to rent property based on the highest bid, not based on costs; Gov. Code, § 50335 authorizing local governmental entities to convey easements to utilities on the basis of contractual negotiation, and not costs.)

Although franchises may be taxed like other forms of property, fees paid for franchises are not taxes, user fees or regulatory licenses. (*City & Co. of S. F.* v. *Market St. Ry. Co., supra,* 9 Cal.2d at pp. 748-749; see also *County of Placer* v. *Corin* (1980) 113 Cal.App.3d 443, 451-452 [170 Cal.Rptr. 232], which concludes that " 'proceeds of taxes' " generally contemplate only those exactions which raise general tax revenues for the governmental entities and do not include special assessments which do not obtain revenue beyond the cost of the improvement; accord *City Council* v. *South* (1983) 146 Cal.App.3d 320, 334-335 [194 Cal.Rptr. 110], regarding maintenance assessment districts.)

By contrast, user fees or charges are typically cost recovery charges imposed upon individual citizens for the specific, temporary use of public property and/or services. (See Gov. Code, § 54985 authorizing local government entities to adjust fees to make them commensurate with the cost of providing products and services.)

Consequently, franchise fees collected for grants of rights of way are not " 'proceeds of taxes' " under article XIII B, section 8, subdivision (c). These fees are not user fees or charges, nor are they for regulatory licenses. Franchise fees need not be included in calculating the appropriations limit.

Judgment affirmed as to the Board's recalculation of the appropriations limit; reversed as to the determination that franchise fees are proceeds of taxes subject to limitation. The parties are to bear their own costs.

Stone, (S. J.) P. J., and Abbe, J., concurred.

The petition of appellant Santa Barbara County Taxpayers Association for review by the Supreme Court was denied July 13, 1989.