In re **SOUTH BAY EXPRESSWAY, L.P. and California Transportation Ventures, Inc., Debtors.**

**South Bay Expressway, L.P. and California Transportation Ventures, Inc., Plaintiffs,**

v.

**Otay River Constructors; Wells Fargo Bank, National Association, as Collateral Agent on behalf of various lenders, including Banco Bilbao Vizcaya Argentaria, S.A., Depfa Bank plc, and the United States Department of Transportation, acting through the Federal Highway Administration; and Intrans Group, Inc., Defendants.**

**Bankruptcy No. 10–04516–A11.
Adversary No. 10–90180–A11.**

United States Bankruptcy Court,
S.D. California.

July 28, 2010.

**592**

Robert Pilmer, Kirkland & Ellis LLP, Los Angeles, CA, for Plaintiffs.

David L. Osias, Allen Matkins Leck Gamble Mallory Natsis, Gerald N. Sims, Kathleen A. Cashman–Kramer, Pyle Sims Duncan & Stevenson, APC, Robert J. Hanna, Shannon Erickson, Best, Best & Krieger, LLP, Dennis J. Wickham, Seltzer Caplan McMahon Vitek, Thomas W. McNamara, La Bella & McNamara, Beth A. Clukey, United States Attorney, San Diego, CA, H. James Wulfsberg, Wulfsberg Reese Colvig & Firstman PC, Oakland, CA, Glenn Douglas Gillett, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM DECISION

LOUISE DE CARL ADLER, Bankruptcy Judge.

### I.

### INTRODUCTION

Plaintiffs and Debtors, South Bay Expressway, L.P. ("SBX") and California Transportation Ventures, Inc. ("CTV"), collectively ("Debtors"), move for summary judgment that the mechanic's liens assert-ed against the toll road portion of State Route 125, also known as the South Bay Expressway (the "SR 125 Tollway"), are invalid as a matter of law. The SR 125 Tollway is one of the four experimental privately constructed public toll road projects authorized by Streets and Highways Code § 143, which the legislature enacted to help solve the State's urgent transportation needs.

■ Debtors argue that, as a matter of law, no mechanic's lien can attach to any interest in the SR 125 Tollway because it is "public property" and a "public work." They argue that Streets and Highways Code §§ 143(b) and (o) deem the SR 125 Tollway to be public property. Further, they argue that Labor Code § 1720(a)(6) supports a finding that the SR 125 Tollway is a public works project. It is well-established under California law that no mechanic's lien remedy is available against public property, or for a public works project. Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as Collateral Agent for certain senior lenders[1] and the United States Department of Transportation acting through the Federal Highway Administrator, collectively ("Senior Lenders"), joins in the Debtors' motion (collectively, "Movants").

■ Defendants, Otay River Constructors ("ORC") and Intrans Group, Inc. ("Intrans") are mechanic's lien claimants who oppose the motion ("ML Defendants"). They argue that SBX's motion is based upon the false premise they have asserted mechanic's liens against public property. In fact, they have asserted mechanic's liens only against SBX's *distinct* private real property interests in the SR 125 Tollway arising from the franchise agreement

---

1. The senior lenders include, but are not limited to, Banco Bilbao Vizcaya Argenteria, S.A., serving as Administrative Agent, and Depfa Bank plc, having served as Technical Agent.

between Caltrans and SBX, and an accompanying 35–year lease agreement. It is settled law that a mechanic's lien can attach to less than a fee simple estate, such as a leasehold interest. They contend the result does not change simply because the fee interest is owned by a public entity.

Further, the ML Defendants emphasize their mechanic's lien remedy is constitutional in origin. Because of its origin, the Court must endeavor to construe Streets and Highways Code § 143 in a manner consistent with their constitutional lien rights. Additionally, they contend the SR 125 Tollway is not a public works project within the applicable definition of "public work" in Civil Code § 3100 of the Mechanic's Lien Law[2] because Caltrans did not "contract for" the work on this project. Movants' reliance on the definition of "public works" in Labor Code § 1720(a)(6) is misplaced since the definition in the Mechanic's Lien Law controls. Therefore, by process of elimination, the SR 125 Tollway is a private work for purposes of permitting mechanic's liens against SBX's private real property interests in the SR 125 Tollway.

For the reasons more fully set forth below, the Court finds the Debtors own distinct private property interests in the public SR 125 Tollway arising from their franchise rights and their accompanying 35–year lease. These distinct property rights are not deemed to be public property, and the SR 125 Tollway is not a public work for purposes of exempting the Debtors' property interests from mechanic's liens. Since the record establishes the mechanic's liens are asserted only against Debtors' property interests, they are not invalid as a matter of law. Accordingly,

the Court denies the motion, and grants summary judgment in favor of the ML Defendants on the limited issues presented in this motion. *Portsmouth Square, Inc. v. Shareholders Protective Committee,* 770 F.2d 866, 869 (9th Cir.1985)(*sua sponte* summary judgment appropriate where one party moves for summary judgment, and it appears from all the evidence presented that there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law).

## II.

### ISSUES

1. Whether the Debtors' interest in the SR 125 Toll way is deemed to be public property exempt from the enforcement of mechanic's liens.

2. Whether the SR 125 Tollway is deemed to be a "public work" exempt from the enforcement of mechanic's liens.

## III.

### FACTUAL BACKGROUND

**A.** *Legislative Background.*

In 1989, the California Legislature enacted emergency legislation authorizing Caltrans to enter into experimental agreements with four private developers to finance, design, construct and operate leaseback public transportation facilities to solve the State's urgent transportation needs due to the State's lack of public revenue. Assem. Bill No. 680 (1989–90 Reg. Sess.), enacted as Stats.1989, ch. 107, pp. 1017–1019, eff. July 10, 1989 ("A.B. 680"). In Section 1 of A.B. 680, the legislature found and declared that:

---

**2.** *See* Title 15 of California Civil Code, "Works of Improvement," commencing at § 3082 *et seq.,* which is generally referred to as the "Mechanic's Lien Law." Chapter 1 entitled "General Definitions" includes Civil Code § 3100, defining "public work" for purpose of the Mechanic's Lien Law.

• Public revenue sources have not kept pace with California's growing transportation needs, so alternative sources should be developed to supplement available public sources of revenue.

• An alternative is privately funded projects whereby private entities obtain exclusive development agreements to build, with private funds, all or a portion of public transportation projects.

• The private entity will have the right to lease the facility for up to 35 years and charge tolls sufficient to retire their private investment (including a reasonable profit), operate and police the facility, maintain the facility, and to make lease payments to the State.

• Privately financed projects allow for private and public joint ventures that take advantage of private sector efficiencies, allow for rapid funding of transportation projects, and more quickly reduces congestion in existing transportation corridors.

Stats.1989, ch. 107, § 1(summary).

Section 2 of A.B. 680 is codified as California Streets and Highways Code § 143. It provides, in pertinent part:

(a) [Caltrans] may solicit proposals and enter into agreements with private entities ... for the construction by, and lease to, private entities of four **public transportation demonstration projects** ....

(b) For the purpose of facilitating those projects, the agreements may include provisions for the lease of rights-of-way in, and airspace over or under, state highways, for the granting of necessary easements, and for the issuance of permits or other authorizations to enable the private entity to construct transportation facilities supplemental to existing state-owned transportation facilities. **Facilities constructed by a private entity pursuant to this section shall, at all times, be owned by the state. The agreement shall provide for the lease of those facilities to the private entity for up to 35 years.** In consideration therefor, the agreement shall provide for complete reversion of the privately constructed facility to the state at the expiration of the lease at no charge to the state.

(Emphasis added.) Streets and Highways Code § 143 was amended in 1989, 2002, 2006, 2007 and 2009. With the exception of § 143(*o*) added in 2006, these amendments are not relevant to the issues presented in this motion. Streets and Highways Code § 143(*o*) provides:

**A lease to a private entity pursuant to this section is deemed to be public property for a public purpose** and exempt from leasehold, real property, and ad valorem taxation, except for the use, if any, of that property for ancillary commercial purposes.

(Emphasis added.)

### B. *The Franchise Agreement—Development Rights*

Pursuant to Streets and Highways Code § 143, Caltrans solicited proposals for the SR 125 Tollway. It selected CTV to be the franchisee-developer for the SR 125 Tollway, and entered into an agreement entitled "Development Franchise Agreement for a Privatized Transportation Project," effective as of January 6, 1991. Subsequently, CTV assigned its franchise rights to San Diego Expressway L.P., and then to "SBX," with the consent of Caltrans.[3] The original agreement, as amended, is collectively the "Franchise Agreement."

---

**3.** Debtors took the position no consent to the assignment was needed. *See* Intrans' RJN at

Ex. 8 (letter from CTV to Caltrans dated August 18, 1992).

Section II of the Franchise Agreement defines the original development project to be the SR 125 Tollway comprising the section of State Route 125 spanning from the border crossing at Otay Mesa to San Miguel Road in Bonita. Thereafter, the parties expanded the development project to include acquisition, design and construction of the GAP/Connector portion of State Route 125 which connects the SR 125 Tollway to State Route 54. This GAP/Connector portion was primarily constructed with public funds, and the parties agreed the public's use of the GAP/Connector would always be toll-free.

Section III of the Franchise Agreement defines the "franchise." Section 3.1 expresses the parties' intent that the franchise create in SBX "a property right and a contractual right." Specifically, Caltrans granted to SBX exclusive development rights within a franchise zone generously defined as a six-mile wide corridor having State Route 125 as its center axis, and running the length of State Route 125 from the border crossing at Otay Mesa to State Route 54. Within the franchise zone, Caltrans granted to SBX a noncompete clause and it agreed to use its best efforts (at its own expense) to discourage any other public entity from developing facilities which might materially compete with SBX within (and outside) the franchise zone during the term of the lease [4] or the Franchise Agreement.

Caltrans also granted to SBX exclusive airspace development rights with the right to enter into accompanying airspace leases within the franchise zone, and the right of first refusal to enter into additional airspace leases for airspace improvements within a designated area outside the franchise zone. The Franchise Agreement reflects SBX's intention to enter into multi-year airspace leases for the development and operation of lodgings, gift shops, restaurants, truck and automobile service stations, financial services, insurance, park-and-ride and other commercial facilities. Accordingly, the Franchise Agreement vested Debtors with substantial development rights within, and outside, the franchise zone.[5]

### C. *Agreements with the Defendants.*

On May 22, 2003, SBX, in its capacity as the "Developer," and ORC, in its capacity as "Contractor," entered into a Toll Road Design Build Contract, as amended, by which SBX engaged ORC as general contractor to design, develop and construct the SR 125 Tollway.

On May 22, 2003, Caltrans, for the benefit of SBX and its Senior Lenders, executed an Estoppel Certificate consenting to the financing transaction between SBX and its Senior Lenders which provided for a consensual encumbrance on all of SBX's right, title and interest in the Franchise Agreement, and other described collateral owned or to be owned by SBX ("Collateral"). On May 22, 2003, SBX executed a Construction and Term Loan Deed of Trust (recorded on May 29, 2003), for the benefit of the Senior Lenders, assigning to the trustee all of SBX's right, title and interest in the Collateral.

On May 15, 2004, SBX and Intrans entered into a Fixed Operating Equipment Contract for work on the SR 125 Tollway. Intrans' work included the design, furnishing, and installation of the toll collection system, the network communication system, and the traffic management system.

---

4. The form of lease for the SR 125 Tollway is attached to the original franchise agreement.

5. The Court's summary description of the scope of franchise rights shall not be binding in future litigation.

### D. *Execution of the Lease and Leasehold Deed of Trust.*

On October 26, 2007, SBX recorded a grant deed transferring the last remaining parcels of the SR 125 Tollway to Caltrans. Thereafter, Caltrans and SBX executed a Memorandum of Lease which was recorded on November 16, 2007. On that same date, Caltrans and SBX executed the SR 125 Tollway Lease, with a 35–year term and a grant of a leasehold interest to SBX of the land underlying the SR 125 Tollway, and the improvements on that land described in the Memorandum of Lease. On that same date, SBX also executed and recorded a Leasehold Deed of Trust for the benefit of its Senior Lenders, encumbering SBX's right, title and interest in the Toll Road Lease and other SBX-owned real property interests.

### E. *The Mechanic's Liens and the Foreclosure Actions*

On July 1, 2009 and September 3, 2009, ORC recorded two mechanic's liens upon the Debtors' interest in the SR 125 Tollway. ORC's mechanic's liens expressly provide:

**NOTWITHSTANDING THE FOREGOING, EXCEPT TO THE EXTENT PERMITTED BY LAW, CLAIMANT DOES NOT ASSERT A PRESENT MECHANICS LIEN ON REAL PROPERTY WHICH IS OWNED BY THE STATE OF CALIFORNIA OR ANY OTHER GOVERNMENTAL ENTITY WHOSE PROPERTY IS NOT SUBJECT TO MECHANICS LIENS UNDER CALIFORNIA LAW.**

[ORC's RJN at Exs. 8–9 (capital and bold font lettering in original) ]

On February 12, 2010, Intrans recorded its mechanic's lien asserting a mechanic's lien on the Debtors' property including SBX's franchise rights and leasehold interest in the SR 125 Tollway. Intrans' mechanic's lien expressly provides:

**NOTWITHSTANDING THE FOREGOING, EXCEPT TO THE EXTENT PERMITTED BY LAW, CLAIMANT DOES NOT ASSERT A PRESENT MECHANICS LIEN ON REAL PROPERTY WHICH IS OWNED BY THE STATE OF CALIFORNIA OR ANY OTHER GOVERNMENTAL ENTITY WHOSE PROPERTY IS NOT SUBJECT TO MECHANICS LIEN UNDER CALIFORNIA LAW.**

[Intrans' RJN, Ex. 7 (capital and bold font lettering in original) ]

On September 23, 2009, ORC filed its mechanic's lien foreclosure action in the state court. The complaint, and the amended complaint, allege that ORC does not assert mechanic's liens on real property which is owned by the State of California or any other governmental entity whose property is not subject to mechanic's liens under California law.

On March 12, 2010, Intrans filed its mechanic's lien foreclosure action in the state court. The complaint alleges that Intrans seeks to foreclose on SBX's leasehold interest, as well as any and all private interests in the real property, as those interests existed on the original commencement date of work on the SR 125 Tollway. Intrans states it does not assert a mechanic's lien on real property which is now owned and was owned by the State of California or any other governmental entity whose property is not subject to mechanic's liens under California law.

### F. *SBX's Previous Admissions of Property Ownership Distinct from Caltrans.*

ORC has also commenced litigation in the state court against SBX concerning the GAP/Connector, and SBX filed a cross-complaint against ORC for breach of con-

tract. In that litigation, ORC challenged SBX's standing to sue for breach of contract since SBX does not hold a valid contractor's license. SBX successfully argued it contracted for the work as an "owner-builder" of the SR 125 Tollway and/or the GAP/Connector; therefore, it is exempt from the contractor's licensing requirements in the Contractor's State License Law.[6] The Superior Court recognized that both Caltrans and SBX have ownership rights—Caltrans has a fee interest, but the franchise agreement conferred on SBX a possessory interest to occupy and cultivate the land. [Intrans' RJN at Ex. 1, p. 7] ORC appealed the ruling to the Court of Appeal and to the California Supreme Court, but both courts summarily denied their petitions for review. [Intrans' RJN at Ex. 1–2]

### G. SBX's Prior Position the Project is not a Public Works Project.

Additionally, in the state court litigation SBX filed a Motion for Judgment on the Pleadings. In that motion, SBX argued the development project is not a "public work" subject to the bonding requirements applicable to public works of improvement in the Civil Code,[7] and the State Contract Act[8] is inapplicable to the development project because the Franchise Agreement was awarded under the authority of Streets and Highways Code § 143. SBX urged that § 143 introduced a "novel" method for developing and constructing infrastructure in California using public-private partnerships *in place of* the State's traditional methods for financing and constructing highways, which is subject to the State Contract Act. It emphasized the legislative intent to "take advantage of *private* sector efficiencies in designing and building transportation projects." [Intrans' RJN at Ex. 3, pp. 6–8, pp. 12–13 (emphasis added)]

The Superior Court granted SBX's motion for judgment on the pleadings, ruling the Franchise Agreement was awarded under the authority of Streets and Highways Code § 143 which created an exception to the State Contract Act, and the bond requirements for a public work of improvement set forth in the Civil Code have no application to these demonstration transportation projects. [Intrans' RJN at Ex. 4] Accordingly, SBX has successfully argued this transportation demonstration project is not a public works project for all purposes.

### H. SBX's Admissions in this Bankruptcy Case.

On March 22, 2010, Debtors filed their voluntary chapter 11 bankruptcy cases. These cases have been administratively consolidated. In documents filed with this Court, SBX has admitted that:

- The Franchise Agreement granted SBX the exclusive right to develop and construct the SR 125 Tollway and, pursuant to a lease-back agreement with Caltrans, to operate the SR 125 Tollway for a period of up to 35 years.

- SBX's unexpired lease with Caltrans is "perhaps the single largest asset of the Debtor's estate."

- SBX contends it owns the "fee" and the improvements on the land where the operations center and headquarters were constructed, and Caltrans must transfer this property to SBX pursuant to a provision in the Franchise Agreement.

---

**6.** Bus. & Prof.Code § 7031 and § 7044

**7.** Civ.Code §§ 3247–3248.

**8.** Pub. Cont.Code § 10100 *et seq.*

[ORC's SSUF at ¶¶ 44–47 (undisputed by Debtors)] Additionally, at the § 341(a) meeting of creditors, Mr. Anthony Evans, speaking on behalf of the Debtors, testified the value of the entire toll road project—the property, the right to collect tolls, and the leasehold—is appraised at $600,000,000. [*Id.* at ¶ 40 (undisputed by Debtors)] Although, Mr. Evans also testified he believes this value is too high, clearly the Debtors believe they own substantial and valuable property rights which they seek to reorganize in their chapter 11 cases.

## I. *The Related Adversary Proceedings.*

Shortly after filing these bankruptcy cases, ORC filed a notice of removal of its mechanic's lien foreclosure action. Debtors then filed this adversary proceeding for declaratory relief to determine the validity, extent and priority of the competing liens. Thereafter, Intrans filed a notice of removal of its mechanic's lien foreclosure action. All three adversary proceedings have been consolidated for purposes of discovery and trial.

## IV.

## LEGAL ANALYSIS

### A. *The Franchise Agreement Granted a Private Interest in Public Real Property.*

■ As a starting point, the Court must determine the nature of the property rights granted to SBX by Caltrans. A governmental franchise is a special privilege granted to a private enterprise by a duly-empowered governmental entity to use public property to provide vital public services which the government itself is otherwise obligated to furnish to its citizens, such as providing water, gas, electricity or telephone services, and the right to use the public streets and ways to bring them to the general public. *Copt–Air, Inc. v. City of San Diego,* 15 Cal.App.3d 984, 987–88, 93 Cal.Rptr. 649 (1971); *Santa Barbara County Taxpayer Assn. v. Board of Supervisors,* 209 Cal.App.3d 940, 948–49, 257 Cal.Rptr. 615 (1989); *see also* 34A Cal. Jur.3d, *Franchises from Governmental Bodies,* § 1 (2008). A franchise is created by contract; it grants to the private enterprise a relatively long-term possessory right in public land to provide public services in exchange for payment of franchise fees. *Santa Barbara County Taxpayer Assn.,* 209 Cal.App.3d at 949, 257 Cal.Rptr. 615; *Saathoff v. City of San Diego,* 35 Cal.App.4th 697, 702, 41 Cal. Rptr.2d 352 (1995).

■ A franchise is considered a possessory "estate in real property" similar to a leasehold or an easement, and an "incorporeal hereditament." [9] *Santa Barbara County Taxpayer Assn.,* at 949, 257 Cal. Rptr. 615; *O'Sullivan v. Griffith,* 153 Cal. 502, 505, 95 P. 873 (1908) (disapproved on other grounds); *People ex rel. Spiers v. Lawley,* 17 Cal.App. 331, 341–42, 119 P. 1089 (1911); *see also* 34A Cal. Jur.3d, *Franchises from Governmental Bodies,* at § 4. A franchise is deemed to be *privately* owned with all of the rights attaching to the ownership of the property in general, and is subject to taxation the same as any other estate in real property. *County of Stanislaus v. Assessment Appeals Bd.,* 213 Cal.App.3d 1445, 1451–52, 262 Cal.Rptr. 439 (1989); *see also* 34A Cal. Jur.3d, *Franchises From Governmental Bodies,* at § 4; 51 Cal. Jur.3d, *Property Taxes,* § 21 and § 28 (explaining a possessory right of a private enterprise in public property is considered a private estate in real property subject to taxation).

**9.** Property that can be inherited.

Moreover, even though a franchise's central purpose involves vital public services, the law is clear that a governmental franchise can be assigned or transferred by any authorized mode of transferring real property the same as other estates in real property. *O'Sullivan v. Griffith*, 153 Cal. at 507, 95 P. 873; *People ex rel. Spiers*, 17 Cal.App. at 346, 119 P. 1089; *see also* 34A Cal. Jur., *Franchises from Governmental Bodies*, at § 30 and § 32. Thus, in the absence of language in the franchise agreement or the enabling statute conditioning the rights to assign, the government's consent is not necessary to transfer the franchise to a third party. *People ex rel. Spiers*, at 341–42, 119 P. 1089.

A franchise can also be *involuntarily* transferred by a judgment creditor to satisfy a judgment owed by the franchisee "in the same manner, and with the same effect, as any other property." *People ex rel Spiers*, at 346, 119 P. 1089 (quotation marks in original). Thus, although a governmental franchise is not subject to execution by a judgment creditor, the other applicable procedures to enforce a judgment remain available. Civ. Proc.Code § 699.720(b). Specifically, a judgment creditor can obtain an order for sale or assignment of the franchise, assignment of the franchise proceeds, or appointment of a receiver, upon noticed motion to the franchisee and the public entity. Civ. Proc.Code § 708.920; *see also* Ahart, Cal. Prac. Guide: Enf. J. & Debt, Ch. 6G–10, at ¶¶ 6:1534–6:1536 (The Rutter Group 2009).

Finally, provided that the franchisee performs the covenants in the contract, the rights acquired by the franchise constitute "vested property rights" protected by both the Constitutions of this State and the United States of America. These rights cannot be taken away or impaired by the State, even though the legislature should modify or repeal the enabling legislation, or by the people through a constitutional amendment. *Los Angeles County v. Southern Cal. Tel. Co.*, 32 Cal.2d 378, 385, 196 P.2d 773 (1948); *City of Beverly Hills v. City of Los Angeles*, 175 Cal. 311, 314–15, 165 P. 924 (1917); *see also* 34A Cal. Jur. *Franchises From Governmental Bodies*, at § 4.

Based upon the above, the Court concludes the franchise granted to SBX is not as novel as Movants urge but, rather, a well-established property right with strong legal protections. The Franchise Agreement appears to be a textbook governmental franchise vesting SBX with relatively long term *private* property rights to use public property to provide vital public transportation facilities, which the government itself is otherwise obligated to furnish to its citizens. These *private* property rights vested upon execution of the Franchise Agreement. In California these franchise property rights are treated essentially the same as any other private estate in real property. Having determined the nature of Debtors' property rights, the balance of Movants' arguments fall like a house of cards.

**B. *Streets and Highways Code § 143 Does Not Exempt Transportation Demonstration Projects from Mechanic's Liens.***

Movants contend that Streets and Highways Code § 143 exempts transportation demonstration projects from the mechanic's lien remedy because it deems the project to be "public property" as a matter of law. However, Movants ignore the constitutional origin of the mechanic's lien remedy in this State. Article XIV, Section 3 of the California Constitution provides:

Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens.

As stated by the California Supreme Court in *Wm. R. Clarke Corp. v. Safeco Ins. Co.*, 15 Cal.4th 882, 889, 64 Cal.Rptr.2d 578, 938 P.2d 372 (1997):

"The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts 'have uniformly classified mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.' " . . . . "[S]tate policy strongly supports the preservation of laws which give the laborer and materialmen security for their claims."

(Citations omitted). Because the mechanic's lien right is constitutional in origin, it must be afforded special weight and statutes must be interpreted in such a way as to avoid conflicts with this constitutional right. *See English v. Olympic Auditorium*, 217 Cal. 631, 642, 20 P.2d 946 (1933) (lien laws must be interpreted to avoid unauthorized limitation of the right granted by the constitution); *Parsons Brinckerhoff Quade & Douglas, Inc. v. Kern County Employees Retirement Assn.*, 5 Cal. App.4th 1264, 1268–70, 7 Cal.Rptr.2d 456 (invalidating statute as conflicting with claimant's mechanic's lien rights).

Thus, the Court must endeavor to construe Streets and Highways Code § 143 in a manner consistent with California's mechanic's lien law unless the legislature clearly intended to exempt these transportation demonstration projects from mechanic's liens, in which case the statute would, arguably, be void. Here, there is no clear expression of legislative intent to exempt these projects from mechanic's liens. The version of Streets and Highways Code § 143 enacted in 1989, as amended in 1990, merely authorized Caltrans to enter into franchise agreements with private entities to privately construct and operate "four public transportation demonstration projects." Streets and Highways Code § 143(a). Although Streets and Highways Code § 143(b) provides these transportation demonstration facilities shall, at all times, be owned by the State, it does not specify the ownership is exclusive. The next sentence provides the franchisee shall have a lease to operate the facilities for a period up to 35 years, thereby providing for concurrent property interests in the transportation project.

Movants' reliance upon Streets and Highways Code § 143(*o*) is misplaced. The legislature added subsection (*o*) to Streets and Highways Code § 143 in 2006. There is no expression of legislative intent to make this amendment retroactive. Even if applied retroactively, Movants' construction would improperly take vested property rights from SBX. Debtors' property rights, including SBX's right to enter into the 35–year lease, vested upon execution of the Franchise Agreement in 1991. The Court has already explained these vested property rights cannot be taken away by subsequent legislation.

When read in its entirety, Streets and Highways Code § 143(*o*) speaks to an exemption for *purposes of taxation*. In the absence of this statutory exemption, the Debtors' possessory real property interests in the public property would be subject to taxation, the same as any other private real property interest. *County of Stanislaus*, 213 Cal.App.3d at 1451–52, 262 Cal.Rptr. 439. Given this logical construction of Streets and Highways Code § 143(*o*), the Court declines to broadly

construe this section in a manner that would improperly take the Debtors' vested property rights and defeat the constitutional mechanic's liens which had, allegedly, already attached to the Debtors' property interests. *Parsons Brinckerhoff,* 5 Cal.App. 4th at 1268–70, 7 Cal.Rptr.2d 456; *see also* Section IV.A., *supra.*[10]

### C. *California Law Permits Mechanic's Liens to Attach to Less than a Fee Simple Estate in Public Property.*

■■ Having established Debtors' concurrent ownership of private property rights in the SR 125 Tollway, the next question is whether any other provision of California law precludes assertion of mechanic's liens on the Debtors' property interests in this public project. Movants argue the SR 125 Tollway is part of the State's highway system which is, as a matter of law, "public property" and a "public work" against which no mechanic's lien may attach.

■■ It is basic California law that principles of sovereign immunity preclude mechanic's liens asserted against public property. *Mayrhofer v. Board of Educ.,* 89 Cal. 110, 112, 26 P. 646 (1891). Because of sovereign immunity, any right to assert a mechanic's lien against public property must be expressly provided for by statute. *Mayrhofer,* 89 Cal. at 112–13, 26 P. 646. However, the Court already explained that Streets and Highways Code § 143 does not deem this project to be exclusively public property. Debtors possess distinct private property interests against which the mechanic's liens are asserted. The assertion of mechanic's liens solely against a private property interest in public prop-

erty does not implicate principles of sovereign immunity. *See e.g. Industrial Asphalt, Inc. v. Garrett Corp.,* 180 Cal.App.3d 1001, 1004, 226 Cal.Rptr. 17 (1986) (allowing mechanic's lien against the private entity's leasehold interest in public real property at Los Angeles International Airport).

Movants rely heavily on the holding *of North Bay Const., Inc. v. City of Petaluma,* 143 Cal.App.4th 552, 49 Cal.Rptr.3d 455 (2006), but it is inapplicable. That case stands for the unremarkable proposition that mechanic's liens cannot be asserted against a public's entity's interest in public property. Here, the mechanic's liens are asserted against Debtors' private property interests, not the concurrent property interest of Caltrans. It is well established, and legally undisputed, that California law permits mechanic's liens against less than a fee simple estate. Civ. Code § 3128; *English v. Olympic Auditorium,* 217 Cal. at 637–38, 640–41, 20 P.2d 946 (1933); *see also* 44 Cal. Jur.3d, *Mechanics Liens,* §§ 34–37.

■■ Additionally, the SR 125 Tollway is not a "public work" for all purposes. It is legally undisputed the Mechanic's Lien Law excludes a "public work" from the "works of improvement" upon which a mechanic's lien may attach. Civ.Code § 3109 (providing: "[t]his chapter [mechanic's liens] does not apply to any public work."). However, the Mechanic's Lien Law specifically defines a "public work" to mean: "any work of improvement contracted for by a public entity." Civ.Code § 3100. It defines the term "public entity" to mean: "the state, Regents of the University of California, a county, city, district, public authority, public agency . . . ." Civ.Code

---

10. The Debtors cannot have it both ways. In the state court litigation, Debtors successfully distinguished their own possessory property interests in this public property. Now, because it serves their pecuniary interests, they

urge a construction of Streets and Highways Code § 143 that deems the entirety of Debtors' property interests to be "public property".

§ 3099. Here, the work on this project was contracted for by SBX, not Caltrans. Since SBX is a private entity, it fails to meet the technical definition of "public work" in the Mechanic's Lien Law.

 The Court does not agree the definition of "public works" in Labor Code § 1720(a)(6) establishes legislative intent to treat these transportation demonstration projects as a "public work" for all purposes. The case of *Professional Engineers v. Department of Transportation*, 13 Cal.App.4th 585, 594, 16 Cal.Rptr.2d 599 (1993), is the only published case addressing Streets and Highways Code § 143.[11] In *Professional Engineers*, the court expressly held that § 143 transportation demonstration projects are "public works," and the "contracts designed to effect those projects are 'public works contracts.' " *Id.* at 594, 16 Cal.Rptr.2d 599. However, the court analyzed Labor Code § 1720(a)(6) in the context of the civil service system to determine whether contracting out to a private entity the right to design and operate toll roads was contrary to the civil service system. It did not deal with mechanic's liens, or whether the toll road demonstration project was a "public work" within the definition of Civil Code § 3100 in the Mechanic's Lien Law. As such, Movants' reliance on *Professional Engineers* is misplaced.

If the legislature had intended these transportation demonstration projects to be considered a "public work" within the definition of Civil Code § 3100, it could have easily said so when passing the enabling legislation. At the same time the legislature enacted Streets and Highways Code § 143, the legislature added § 1720(a)(6) to the Labor Code to expressly include Streets and Highways Code § 143 transportation demonstration projects within the definition of "public works" in the Labor Code. The legislature did not make a similar amendment to the definition of "public work" in Civil Code § 3100. It also did not amend Civil Code § 3247 to require a public works payment bond for these transportation demonstration projects.[12]

Finally, the Court rejects Movants' argument that a state highway is "so essentially public in nature" it should be considered "contracted for" by Caltrans. Although there is no requirement in Civil Code § 3100 that the public entity must *directly* contract with the contractor or subcontractor for the project to be a "public work," factually it does not follow that Caltrans "contracted for" the construction of the SR 125 Tollway. Caltrans did not fund the construction of the SR 125 Tollway; nor is it a party to the construction contracts. Consistent with the very nature of a governmental franchise, Caltrans granted to SBX—a pri-

---

**11.** Intrans has cited *Best Western Paving, Inc. v. Granite Constr., Inc.* 2002 WL 31682370 (Cal.Ct.App. Nov.27, 2002) as an unpublished case which examined the holding of *Professional Engineers* and Street and Highways Code § 143, and held the project was *not* a "public work" within the requirements of the Mechanic's Lien Law in the Civil Code. This case is not certified for publication, and cannot be cited or relied upon by this Court pursuant to California Rules of Court 8.1115(a).

**12.** Section 21.5 of the Franchise Agreement contemplates a mechanic's lien or stop notice may be asserted against the development project. Section 21.6 specifies the Franchise Agreement is *not* a "public work" as defined in the State Contract Code. In the state court litigation, Debtors successfully argued the development project is not a "public work" for purposes of complying with the State Contract Act, and the bond requirements for a public work of improvement in Civil Code § 3247–3248 of the Mechanic's Lien Law do not apply.

vate entity—the right to *privately* develop, fund and contract for the construction of the SR 125 Tollway, and thereafter, to operate this portion of State Route 125 as a toll road pursuant to a 35–year lease. Although this case is factually different, the court in *Progress Glass Co. v. American Ins. Co.*, 100 Cal.App.3d 720, 161 Cal.Rptr. 243 (1980) stated its rationale simply:

> [the public entity] was not a party to the construction contract executed by the owners of the project and [the private contractor]. The project was therefore not a "public work," within the meaning of section 3100, because it was not contracted for by a public entity' within the same meaning. It [was] . . . a "private work by elimination." *Id.* at 727, 161 Cal.Rptr. 243. Likewise, in this case, by process of elimination, the Court holds the Debtors' construction of the SR 125 Tollway is a private work and mechanic's liens can attach to the Debtor's distinct private property interests in the SR 125 Tollway.

### D. *The Public Policy Arguments are a Red Herring.*

Movants' public policy arguments are a red herring. They urge that public policy does not support allowing mechanic's liens to encumber the SR 125 Tollway, or any interest in the SR 125 Tollway, because it could have the undesirable result of disrupting the public's use of a public highway and the title to public property. They explain that foreclosure of a mechanic's lien could result in a state highway facility being operated by a party without adequate experience and capacity, and without the approval of the State of California—a result the legislature could not have intended when it enacted Streets and Highways Code § 143 authorizing these transportation demonstration projects. However, Movants appear to have little

concern about this same disruption to the public if the Senior Lenders foreclose their consensual lien against the SR 125 Tollway.

In reality, since the mechanic's liens are only asserted against the Debtors' property interests, the successful bidder would merely step into the Debtors' shoes with no greater rights than the Debtors possessed under the Franchise Agreement and the accompanying lease. The new franchisee would be subject to the same duties to provide proper and adequate services to the public, and the State would continue to have the same rights to assert a default and terminate the franchise in the event the public is not being properly served. *See* Franchise Agreement at § 17.3; *see also* 34A Cal. Jur.3d, *Franchises from Governmental Bodies*, § 21.

■ California law permits voluntary and involuntary sales of a governmental franchise. It provides a judgment enforcement procedure which permits a judgment creditor, upon noticed motion to the franchisee and the public entity, to obtain a court order directing the sale or assignment of the franchise, assignment of the franchise proceeds, or appointment of a receiver. Civ. Proc.Code § 708.920. This judgment enforcement statute contains mechanisms to assure the public's interest is protected. There is no reason why a court could not implement similar protective procedures when, and if, it reaches the issue of foreclosure of the mechanic's liens.

### V.

### CONCLUSION

This motion turns on the nature of the rights vested in Debtors under the Franchise Agreement. The Franchise Agreement vested in Debtors a variety of relatively long-term private possessory

interests in real property, including a leasehold interest to operate the SR 125 Tollway as part of State Route 125 for the benefit of the citizens of this State. These private property rights vested upon execution of the Franchise Agreement, and in California they are treated essentially the same as any other private estate in real property. As such they can be encumbered and transferred subject only to the terms of Streets and Highways Code § 143 and the Franchise Agreement. Nothing in Streets and Highways Code § 143 deems the transportation demonstration project to be exclusively public property. No other provision of California law precludes the assertion of mechanic's liens against the Debtors' distinct private property interests in this public project.

Finally, the Court disagrees that an involuntary transfer of Debtors' property interests in the SR 125 Tollway would contravene public policy. California law permits a franchisee's interest in a governmental franchise to be involuntarily sold provided the public's interest is properly protected. The new franchisee would be subject to the same duties to provide proper and adequate services to the public, and Caltrans would continue to have the same rights to assert a default and terminate the franchise in the event the public is not being properly served. Accordingly, the Court denies the motion, and grants summary judgment in favor of the ML Defendants on the limited issues presented in this motion. The ML Defendants shall jointly prepare and lodge an order in accordance with this Memorandum Decision within ten days of its entry.