STATE BOARD OF TAX APPEALS.

RIDER COLLEGE, PETITIONER, v. CITY OF TRENTON, RESPONDENT.

Decided April 1, 1941.

For the petitioner, *William J. Egan* (by *Robert L. Hood*).

For the respondent, *Louis Josephson*.

QUINN, President. Petitioner is an institution of higher education, specializing in the fields of business and accounting. The land and buildings wherein it conducts its activities, together with attendant personalty, were assessed as exempt from taxation for the years 1938 and 1939 by the city of Trenton. For the year 1940 the assessment was restored as prior to the year 1938 on both real and personal property. An appeal to the Mercer County Board of Taxation, praying exemption from taxation upon the ground that the property was devoted exclusively to the uses of a college or school, not conducted for profit, within *R. S.* 54:4-3.6; *N. J. S. A.* 54:4-3.6, was denied by that body. Hence this appeal.

It is not disputed that all of the requirements for exemption specified in the statute have been complied with by petitioner, except for the proviso that the institution be not conducted for profit. Respondent contends it always has been conducted for profit, and was during the tax year in question. Our decision of the controversy must be based upon our find-

ings as to the situation existing on the assessing date, October 1st, 1939 (*Borough of Longport* v. *Max and Sarah Bamberger Seashore Home (Supreme Court,* 1917), 91 *N. J. L.* 330; 102 *Atl. Rep.* 633), although evidence of the prior history of the enterprise is admissible, where calculated to cast some light upon the true situation upon the assessing date.

Petitioner was incorporated in 1897 under an act of June 3d, 1890, providing for the incorporation of schools and educational institutions, and its certificate was amended in 1937, so as to recite under its objects, that the affairs of the college be so conducted that no earnings of the institution should inure to the benefit of any private shareholder or individual.

There are no private ownership interests identified in any way with the college, other than that a note and a mortgage on the property are held by two Trenton banking institutions. It is governed by a board of fifteen trustees, partly self-perpetuating, partly elected by the alumni, and including the president and the dean of the institution, *ex officio.* The board selects the administrative officers, who in turn conduct the detailed affairs of management of the institution.

It appears that there is a close degree of correlation between the income of the college, which is derived exclusively from tuition fees, and the expenses of operation, including allowances for reduction of principal balances due on the mortgages. It is testified on behalf of petitioner that charges are fixed with no intention of yielding profits, but in order to meet estimated budgetary outlays for operations and reduction of indebtedness. We think the proofs, as a whole, fairly substantiate these stated objectives. Tuition fees are comparable to those of colleges and universities giving similar courses of instruction. Salaries to officers seem commensurate with the responsibilities and burdens assumed by the administrative and teaching officers, respectively, and if they seem substantial, it must be considered that petitioner has earned for itself a reputation as one of the foremost institutions of its type in the east. Its service to the State of New Jersey is amply attested by the fact that its graduates fill

approximately one-half of the secretarial teaching positions in the secondary schools of the state. Results of this type may be deemed to warrant an attempt at insuring their continuance, through the adequate compensation of those entrusted with the conduct of the affairs of the school, without incurring the peril of loss of the statutory tax exemption. Compare the $7,500 salary paid to the president of the school in *Westminster Choir School, Inc.*, v. *Borough of Princeton, New Jersey Tax Reports* 1934-1939, *p.* 295, with the $8,400 annual salary of the president and dean in the instant case, charged with the operation of an institution having an annual budget in excess of $300,000.

We recently examined the authorities dealing with the question of what constitutes operation for profit by a school, such as to deprive it of the right to tax exemption (*Buxton Country Day School, Inc.*, v. *Township of Millburn* (1940), 18 *N. J. Mis. R.* 443; 14 *Atl. Rep.* (*2d*) 269), and we concluded that from the varying tests laid down in the reported decisions, the underlying criterion upon which the courts appeared to rely most heavily, although not perhaps in every instance articulately, was whether the institution in question gave to the public at large substantially more than it received, "as a public work of service to the state, without expectation of remuneration." A subsidiary consideration was whether tuition charges were fixed so as to evince a purpose to make a profit over and above the cost of tuition. *Institute of Holy Angels* v. *Bender* (*Supreme Court*, 1909), 79 *N. J. L.* 34; 74 *Atl. Rep.* 251; *Mayor of Princeton, &c.*, v. *State Board* (*Supreme Court*, 1921), 96 *N. J. L.* 334; 115 *Atl. Rep.* 342. Another point of view was that of inquiring as to whether the objects of the school were "fundamentally charitable or philanthropic." *Dwight School of Englewood* v. *State Board, &c.* (*Supreme Court*, 1935), 114 *N. J. L.* 594; 177 *Atl. Rep.* 875, and cases cited.

From whatever reasonable standpoint the issue is approached, we regard it as established that, whatever may have been the situation in the past, the petitioner institution was not conducted for profit as of October 1st, 1939, in either the sense of the method by which its charges are fixed, or from

the standpoint of its public contributions to the general welfare. For the school years 1939-1940, the school granted scholarships, of approximately $25,000 in value, to 134 students. The New Jersey Department of Education has acknowledged the high educational standards maintained by it, its students are widely accepted for transfer in other institutions of unquestionable standing, and its graduates as teachers. The Federal Internal Revenue Department regards the school as exempt from federal taxation, and contributions to it by taxpayers are deductible from income as in the case of contributions to charity, by rulings of that department introduced in evidence.

Respondent has stressed that petitioner makes considerable expenditures in the form of catalogues, advertisements, and for vocational guidance councillors, which, it is asserted, establish the commercial nature of the enterprise. We have given considerable thought to the proof in this regard, since, at first blush, it might seem that a school not conducted for profit would not require the benefits of publicity. Upon mature consideration, however, and considering the case in its entirety, we conclude that the making of reasonable expenditures, fixed in the sound discretion of the trustees and designed to develop public good will toward the college, do not derogate from the non-profit aspect of the enterprise as a whole. Many institutions of undoubtedly exempt status have found it desirable, in a legitimate and non-profit sense, to cultivate favorable public relations, frequently through athletic teams and musical organizations subsidized by the college or school in question. We do not think petitioner's efforts in this direction are essentially commercial in nature, but merely calculated to promote public good will.

Testimony was adduced by respondent designed to establish discrimination by petitioner against colored students attempting to matriculate therein. This proof did not bear upon the assessing date, and is therefore irrelevant. There was uncontroverted proof of several instances of admission of colored students to the college within recent years.

The judgment of the Mercer County Board of Taxation is reversed, and the assessment ordered canceled.