[Sac. No. 6110. In Bank. May 14, 1952.]

SUTTER HOSPITAL OF SACRAMENTO, Appellant, v. CITY OF SACRAMENTO, Respondent.

34

Butler & Reckers and Stanley W. Reckers for Appellant.

Musick & Burrell, Howard Burrell and James E. Ludlam as Amici Curiae on behalf of Appellant.

Everett M. Glenn, Ralph H. Lewis and Fred R. Pierce for Respondent.

Harold W. Kennedy, County Counsel (Los Angeles), Arvo Van Alstyne, Deputy County Counsel, and Ray L. Chesebro, City Attorney (Los Angeles), Louis A. Babior, Deputy City Attorney, as Amici Curiae on behalf of Respondent.

SPENCE, J.—Plaintiff brought this action to recover real property taxes paid under protest for the fiscal year 1946-1947. The underlying question is whether the tax assessments were properly made in view of the welfare exemption law. (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214.) The trial court found that plaintiff did not meet certain conditions for exemption; and from the judgment accordingly entered in favor of defendant, plaintiff appeals.

One of the conditions which the trial court found that plaintiff had failed to meet is that embodied in subdivision 3 of section 214 of the Revenue and Taxation Code, which reads: "The property is not used or operated . . . for profit regardless of the purposes to which the profit is devoted." Plaintiff contends that the evidence is insufficient to sustain the trial court's findings relative to plaintiff's failure to meet this condition. As there is no dispute concerning the facts, the question becomes essentially one of statutory construction. We have concluded that plaintiff's position with respect to this phase of the controversy cannot be sustained, and that the judgment must be affirmed. It is therefore unnecessary to discuss certain other questions raised concerning plaintiff's qualification for exemption.

■ In 1944 a constitutional amendment was adopted relating to the exemption of certain property used for hospital purposes. (Art. XIII, § 1c.) The relevant portions provide that the "Legislature may exempt from taxation all or any portion of property used exclusively for . . . hospital . . . purposes and owned by . . . corporations organized and operated for . . . hospital . . . purposes, not conducted for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual." Unlike certain other provisions relating to tax exemptions (see art. XIII, §§ 1a, 1b, 1½ and 1½a), this amendment is not self-executing, and legislation is required in order to effect the exemption of any property. ■ The amendment is purely permissive rather than mandatory in character, and it qualifies section 1 of article XIII, which requires that all property be taxed according to its value "except as otherwise in this Constitution provided." ■ In other words, the Legislature could refrain from exempting any of the property referred to in the amendment or it could exempt only such property as might meet the conditions specified in the amendment and such further conditions as the Legislature might see fit to impose. The Legislature followed the latter course and enacted sec- ·

tion 214 of the Revenue and Taxation Code, which imposes conditions in addition to those found in the constitutional amendment. It is therefore a question of the construction to be placed on the conditions set forth in said section 214 which is presented by this appeal.

Said section 214 contains six numbered subdivisions of general application, but only the pertinent provisions of the main paragraph and three of the subdivisions need be considered here. It is provided that ''Property used exclusively for . . . hospital . . . purposes owned and operated by . . . corporations organized and operated for . . . hospital . . . purposes is exempt from taxation if: (1) The owner is not organized or operated for profit; (2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual; (3) The property is not used or operated by the owner or by any other person for profit regardless of the purposes to which the profit is devoted; . . . .''

Plaintiff was organized as a nonprofit corporation in 1935. It acquired the physical assets of its predecessor by giving in exchange its bonds. In 1945 plaintiff's physical assets for accounting purposes had a value of $764,895.39 and its then bonded indebtedness was some $292,000. For 1945 the surplus of income over current expenses, which expenses included interest payments and depreciation on the buildings, machinery and equipment, amounted to $86,609.24; for 1946, the surplus was $106,603.12. Reduced to percentages, the surplus for each year was slightly in excess of 8 per cent of gross income. The surplus was mingled with other cash on hand and was used for debt retirement and for expansion. Instance of this latter use was the building and equipping of an X-ray room in 1947 at a cost of $60,000.

It is conceded that plaintiff operated its hospital properties with the intent of producing, if possible, a surplus of income over expenses so as to permit the periodic retirement of portion of its bonded indebtedness and to permit the expan sion of its facilities. It is further conceded that it had su ceeded and was succeeding in accomplishing this purpo Defendant argues that by reason of plaintiff's profit-mak intent and purpose, the allowance of the claimed exemp would run counter to the statutory condition that such erty be ''not used or operated by the owner . . . for regardless of the purposes to which the profit is devote (Rev. & Tax. Code, § 214, subd. (3).) Under a strict but sonable construction of the tax exemption law (*Cedars*

*Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045]), defendant's contention must be sustained.

The word "profit" has been defined in various ways, as appears by reference to any standard dictionary. In dealings between parties to a commercial venture, it has been defined as "acquisition beyond expenditure" or "excess of value received over cost." (*Prince* v. *Lamb,* 128 Cal. 120, 126 [60 P. 689].) In relation to tax laws, the phrase "conducted for profit," which appears to be the equivalent of "operated for profit," has presented some difficulty but has been generally held to convey the meaning of operated or conducted for the *purpose* of making a profit. (See *Mayor & Common Council of Borough of Princeton* v. *State Board of Taxes & Assessments,* 96 N.J.L. 334 [115 A. 342, 344]; *Buxton Country Day School, Inc.* v. *Millburn Township,* 18 N.J.Misc. 443 [14 A.2d 269, 270].) Accordingly, the test indicated by such phrases, as so construed, is not necessarily whether there is or may be a profit but whether the claimant is operated or conducted for the purpose of making a profit; that is, whether the charges are fixed with the intention of yielding a surplus over and above operating expenses. (See ■*Rider College* v. *City of Trenton,* 19 N.J.Misc. 304 [19 A.2d 22, 23]; ▌*College of Paterson* v. *City of Paterson,* 21 N.J.Misc. 13 [29 A.2d 402, 403].) It thus appears that plaintiff can find little comfort in the ordinary meaning of the word "profit" or in the construction which has been given to the phrase "conducted for profit" in the above cited authorities. Plaintiff relies heavily, however, on the construction of the phrase "used or held for profit" as found in *San Gabriel Cemetery Assn.* v. *County of Los Angeles,* (1947) 49 Cal.App.2d 624 [122 P.2d 330].

In the San Gabriel case it was held that net earnings derived from the cemetery's sale of burial lots in excess of their cost did not constitute "profit" within the ban of the constitutional exemption disqualifying property "used or held for profit," where such excess was used for the purchase of more land and other cemetery purposes. (Art. XIII, § 1b.) It was there said at page 626: "The word 'profit' does not mean

financial benefit that accrues to the association through the sale of burial space at a price in excess of its cost where such gain is used for the upkeep of the cemetery property. The word 'profit' in article XIII, section 1b, means net earnings the benefits of which accrue directly or indirectly to the stockholders or members of the association."

The Legislature presumably had knowledge of the quoted judicial construction of the word "profit" when it subsequently enacted the section now under consideration. (Rev. & Tax. Code, § 214; see 23 Cal.Jur. § 159, p. 782; *Miller* v. *McColgan,* 17 Cal.2d 432, 439 [110 P.2d 419, 134 A.L.R. 1424].) Furthermore, the Legislature had previously sought to place a similar legislative construction on the phrase "not conducted for profit" appearing in article XIII, section 1a, relating to the exemption of certain educational institutions. Section 203 of the Revenue and Taxation Code provided: "An educational institution of collegiate grade is not conducted for profit when it is conducted exclusively for scientific or educational purposes and no part of its net income inures to the benefit of any private person." It thus appears that at the time section 214 of the Revenue and Taxation Code was enacted in 1945, the meaning of the word "profit," as used in tax exemption laws, had been construed in such manner that the nonprofit requirements were deemed to be satisfied so long as none of the "net earnings" accrued "directly or indirectly to the stockholders or members of the association," as stated in the San Gabriel case, or so long as no part of the "net income inures to the benefit of any private person," as stated in section 203 of the Revenue and Taxation Code. In other words, the profit concept had been defined in terms relating solely to the purpose for which "net income" or "net earnings" might be used and only the use thereof for the purpose of benefiting a private person was prohibited.

In the light of these prior definitions, judicial and legislative, we turn now to a consideration of the terms employed in the first three subdivisions of section 214 of the Revenue and Taxation Code. These subdivisions contain separately stated but interrelated conditions. Property used exclusively for hospital purposes is thereby declared exempt only "if: (1) The owner is *not organized or operated for profit*; (2) No part of the *net earnings* of the owner inures to the benefit of any private shareholder or individual; (3) The property is *not used or operated* by the owner or by any other person *for profit regardless of the purposes to which*

*the profit is devoted;* . . ." (Italics added.) If subdivision three had been omitted, it might well be argued that the Legislature intended that the nonprofit conditions of subdivision one would be satisfied so long as none of the "net earnings" inured to the benefit of any private individual. But subdivision three cannot be declared to have been inserted without reason, and it seems clear that it was intended thereby to broaden the profit concept so as to deny exemption whenever the property is operated for the purpose of profit "regardless of the purposes to which the profit is devoted." Thus it appears that the Legislature adopted a different concept of "profit" for the purposes of section 214 by providing that the nonprofit requirements could not be satisfied merely by devoting the net earnings to exempt (hospital) purposes.

In any event, the most that can be said is that there is grave doubt as to whether the Legislature intended that the property used as is plaintiff's property, by an owner operating for the admitted purpose of producing net earnings, was intended to be accorded the exemption. In such circumstances, settled principles of statutory construction require that any doubt be resolved against the right to the exemption. (*Helping Hand Home* v. *San Diego County,* 26 Cal.App.2d 452, 458-459 [78 P.2d 778].)

In reaching the foregoing conclusion, we are not unmindful of the fact that both the constitutional amendment and the legislative enactment under discussion contain provisions prohibiting the inurement of "net earnings" to the benefit of any individual, thereby apparently recognizing that net earnings might accrue in a given case without necessarily defeating the exemption. But, as above indicated, it is the statute which is under construction here, and it must be construed as a whole, giving meaning and effect to all the terms and provisions thereof. (*Weber* v. *County of Santa Barbara,* 15 Cal.2d 82, 86 [98 P.2d 492]; *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 641-642 [122 P.2d 526].) Under the well established rule, we cannot ignore the provisions of the above-quoted subdivision three of said section 214.

Whether the accrual of "net earnings" will defeat the right to the exemption depends upon the particular facts involved. The case of *Young Men's Christian Assn.* v. *County of Los Angeles,* 35 Cal.2d 760 [221 P.2d 47], concerned the tax exempt status of the dormitory portions of Y.M.C.A. buildings where accommodations were furnished to members at a moderate rental. It there appeared that such accommo-

dations were offered at "a minimum charge," that there was no "real profit motive" in such undertaking, and that at each of the branches the total revenues were less than the expenditures, with the difference being met by voluntary contributions and a Community Chest allowance. (P. 771.) While it was stated in the Y.M.C.A. case that it was contemplated by the statute that the exempt institution might have "income and even 'net earnings' without losing the benefit of its exemption, provided such earnings are derived from the normal pursuit of its exempt purposes and provided further that all other conditions, enumerated in section 214 of the Revenue and Taxation Code, are met" (p. 771), all that was said in that opinion must be read in the light of the facts which were presented there. The question here involved was not presented there, and we did not intend to imply that property which was designedly and consistently operated for profit, even though the profit was used for exempt (hospital) purposes and not for the purpose of benefiting any individual, would be exempt. The distinction between the facts involved in the Y.M.C.A. case and those found in the present record is readily apparent.

Here the determinative factor is the operation of plaintiff's property for the admitted purpose of producing a profit in the sense that the operation was one deliberately designed to produce income in excess of all operating costs. The fact that plaintiff has succeeded in producing net earnings is not accidental or allocable to a fortuitous error in judgment in determining the charges made for its services. On the contrary, plaintiff functioned on a sound financial basis in a manner akin to any modern commercial enterprise intent upon producing a profit from its operations. It is argued that the above-indicated construction of the welfare exemption, denying exemption because of the adoption of sound financial practices, will make it difficult, if not impossible, for modern hospitals to plan for expansion and the improvement of facilities for the better service of the public without losing the benefit of the exemption. This argument may merit serious consideration, but it should be addressed to the Legislature rather than to the courts. This court's function begins and ends with construing the statute as enacted. The present form of the statute compels the conclusion that plaintiff's claim for exemption must be denied because of its failure to meet the condition that its property be "not

used or operated . . . for profit regardless of the purposes to which the profit is devoted.'' (Rev. & Tax. Code, § 214, subd. (3).)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied June 11, 1952.