In re SOUTH BAY EXPRESSWAY, L.P. and California Transportation Ventures, Inc., Debtors.

South Bay Expressway, L.P. and California Transportation Ventures, Inc., Plaintiffs,

v.

County of San Diego, Defendants.

Bankruptcy No. 10–04516–A11.
Adversary No. 10–90497–A11.

United States Bankruptcy Court, S.D. California.

June 27, 2011.

Robert Pilmer, Kirkland & Ellis LLP, Los Angeles, CA, for Plaintiffs.

Walter J. De Lorrell, III, Office of County Counsel, San Diego, CA, for Defendants.

**MEMORANDUM DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**

LOUISE DE CARL ADLER, Bankruptcy Judge.

**I.**

**INTRODUCTION**

South Bay Expressway, L.P. and California Transportation Ventures, Inc. (collectively "Debtor") filed this adversary proceeding against the County of San Diego ("County"), seeking recovery of almost $14 million in property taxes paid to the County between 2007–2010 and ordering the County to assess no further taxes on its property.[1] The Debtor's property is a possessory leasehold interest in a California Streets and Highways Code § 143[2] privately-financed transportation demonstration project consisting of the toll road portion of State Route 125, commonly

known as the South Bay Expressway (the "SR 125 Toll Road").

The Debtor asserts that § 143(*o*) deems its leasehold interest to be public property exempt from taxation. Accordingly, the Debtor has filed this motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and Fed. R. Bankr.P. 7012(b), seeking a declaration that all taxes assessed against its leasehold interest are void as a matter of law, and that the County may not assess further taxes against its leasehold interest.

The County opposes the motion and requests entry of a judgment in its favor, asserting that the tax exemption created in § 143(*o*) is unconstitutional under Article XIII of the California Constitution ("Constitution"). Because the County's opposition raised a constitutional challenge and the Attorney General for the State of California ("Attorney General") had not been apprised of this issue, the hearing on the motion was continued to give notice of the constitutional challenge to the Attorney General in compliance with Fed.R.Civ.P. 5.1(a) and (b) and Fed. R. Bankr.P. 9005.1. The Attorney General, through the California Department of Transportation ("Caltrans"), has now intervened and filed a statement in opposition, arguing that § 143(*o*) does not apply to the Debtor's leasehold interest so there is no need to reach the constitutional issue. Alternatively, Caltrans argues the Court's ruling of unconstitutionality should be limited to the statute as applied to the Debtor's leasehold interest.[3]

---

1. The complaint is entitled: "Complaint to Recover Tax Overpayments From County of San Diego, California Pursuant to F.R.B.P. 7001(1)."

2. Hereinafter, all section references shall refer to the California Streets and Highways Code, unless otherwise specified.

3. Caltrans does not dispute that application of § 143(*o*) is unconstitutional as applied to Debtor's leasehold interest. However, it opposes a ruling that § 143(*o*) is facially unconstitutional.

For the reasons more fully set forth below, this Court finds § 143(*o*) applies to the Debtor's leasehold interest, but that it is facially unconstitutional. Accordingly, it denies the Debtor's motion and enters judgment in favor of the County.

## II.

## FACTUAL BACKGROUND

### A. *Case History.*

In January, 1991, the Debtor and Caltrans entered into a Development Franchise Agreement pursuant to § 143 ("DFA") for the private financing, development and construction of the SR 125 Toll Road spanning from Spring Valley to the border crossing at Otay Mesa. The DFA provided that the Debtor would obtain certain environmental clearances; acquire certain real property in the County of San Diego; design and construct the ·SR 125 Toll Road thereon through private financing; and, upon completion, the Debtor would transfer the land and the SR 125 Toll Road to Caltrans. Additionally, the DFA provided that, on or after the transfer date, Caltrans and the Debtor would execute a lease granting to Debtor the exclusive right to operate and collect tolls for the use of the SR 125 Toll Road for a period of 35 years. The DFA provided that the lease agreement would be substantially in the form attached thereto as Exhibit B.

The Debtor obtained the private financing to develop and construct the SR 125 Toll Road. It encountered many delays and other problems during the development and construction phases, which are not germane to this opinion. Upon completion to the apparent satisfaction of Caltrans, the SR 125 Toll Road opened for public use and, on November 16, 2007, Caltrans and Debtor executed the SR 125 Toll Road lease ("Toll Road Lease"). The Debtor's operation of the SR 125 Toll Road was not as profitable as projected. Further, the Debtor became embroiled in substantial litigation which drained its limited assets.

On March 22, 2010, the Debtor filed these administratively consolidated chapter 11 bankruptcy cases to stay the litigation, determine lien priorities and restructure its indebtedness. The Debtor commenced an adversary proceeding against its senior lenders and mechanic's lien claimants, and filed a motion for summary judgment to determine the validity and priority of its liens against the SR 125 Toll Road.

The Debtor's motion for summary judgment argued that the mechanic's liens asserted against the SR 125 Toll Road were invalid as a matter of law because mechanic's liens cannot be asserted against public property. The Debtor argued the SR 125 Toll Road was public property because § 143(b) deems it to be state-owned, and § 143(*o*) deems the Toll Road Lease to be public property exempt from taxation. The Court denied the motion and granted summary judgment in favor of the mechanic's lien claimants, holding the Debtor owned a variety of distinct, private real property interests in public property arising from the DFA and the Toll Road Lease, which are not public property. *In re South Bay Expressway, L.P.*, 434 B.R. 589, 593 (Bankr.S.D.Cal.2010).

Thereafter, the Debtor negotiated with its senior lenders, and it reached a global settlement resolving the lien priority dispute and the pending litigation. On April 14, 2011, the Court confirmed the Debtor's Third Amended Joint Plan of Reorganization, and approved the global settlement with the support of all major creditor constituencies.

The Debtor also commenced this adversary proceeding against the County to re-

cover the approximately $14 million in property taxes already paid, and to prohibit the County from assessing further taxes against the Toll Road Lease. The hearing on the motion was continued to allow the Attorney General to weigh in on the County's constitutional challenge to § 143(*o*).

### B. *History of Streets and Highways Code § 143.*

In 1989, the California Legislature enacted emergency legislation authorizing Caltrans to enter into experimental agreements with four private developers to privately finance, design, construct, and "operate and lease-back", public transportation facilities to solve the State's urgent transportation needs due to the State's lack of public revenue. A.B. 680, 1989–90 Leg., 8740 Sess. (Ca. 1989) ("A.B. 680"). Section 2 of A.B. 680 was codified as Streets and Highways Code § 143. It provided in pertinent part:

(a) [Caltrans] may solicit proposals and enter into agreements with private entities ... for the construction by, and lease to, private entities of four **public transportation demonstration projects**....

(b) For the purpose of facilitating those projects, the agreements may include provisions for the lease of rights-of-way in, and airspace over or under, state highways, for the granting of necessary easements, and for the issuance of permits or other authorizations to enable the private entity to construct transportation facilities supplemental to existing state-owned transportation facilities. **Facilities constructed by a private entity pursuant to this section shall, at all times, be owned by the state. The agreement shall provide for the lease of those facilities to the private entity**

**for up to 35 years.** In consideration therefor, the agreement shall provide for complete reversion of the privately constructed facility to the state at the expiration of the lease at no charge to the state.

(Emphasis added.) The 1989 version of § 143 was silent on the issue of taxes, as were the 1990 and 2002 amendments to this section.

In 2006, the Legislation enacted Assembly Bill 521 ("A.B. 521") making significant amendments to § 143, including the addition of § 143(i),[4] providing:

**A lease to a private entity pursuant to this section is deemed to be public property** for a public purpose and exempt from leasehold, real property, and ad valorem taxation....

A.B. 521, 2005–06 Leg., 2155 Sess. (Ca. 2006) (emphasis added). Additionally, by separate bill, the Legislature enacted Senate Bill 463 ("S.B. 463") adding § 143.1 solely regarding the SR 125 Toll Road. The purpose of § 143.1 was to authorize an amendment to the DFA and the Toll Road Lease to allow the Debtor to collect tolls for a 45–year period instead of a 35–year period, and, upon conclusion of the 45–year period, to authorize SANDAG to collect tolls thereafter under specified terms and conditions. S.B. 463, 2005–06 Leg., 2155 Sess. (Ca. 2006). Section 143.1(a)(3) specifies that, except for amendments to the DFA consistent with § 143.1, the DFA shall remain in full force and effect and the parties' rights are not modified.

In 2007, the Legislature made further amendments to § 143, and in 2009 this section went through another significant amendment. Both amendments continued the language in § 143(*o*) as it was enacted in 2006.

---

4. Subsection (i) became subsection (*o*) of § 143, by subsequent amendment.

## C. *Other Relevant Facts.*

It is undisputed that the DFA was entered into when § 143 was silent on the issue of taxes. It is also undisputed the Toll Road Lease was executed in 2007 *after* the Legislature added the public property tax exemption in § 143(*o*). Although the Toll Road Lease is similar to the form of lease contemplated by Exhibit B to the DFA, its language is not identical. [Mot. J. Hr'g T. 20:14–20, May 18,2011]

## III.

### ISSUES

1. Whether Streets and Highways Code § 143(*o*) applies to the Toll Road Lease?

2. Whether the tax exemption created by Streets and Highways Code § 143(*o*) is unconstitutional?

3. Whether § 143(*o*) is unconstitutional only as applied to the Toll Road Lease?

## IV.

### LEGAL ANALYSIS

 The issue presented by the motion is the constitutionality of the public property tax exemption created by Streets and Highways Code § 143(*o*). If the tax exemption in § 143(*o*) is constitutional, Debtor is entitled to the relief requested by its motion. If it is unconstitutional, then the County is entitled to a cross-judgment in its favor. However, the Court is mindful that constitutional challenges are disfavored. The principle of judicial restraint requires a court to avoid ruling on the constitutionality of a statute if another basis for the decision is possible. *Sanchez v. City of Modesto,* 145 Cal. App.4th 660, 671, 51 Cal.Rptr.3d 821 (2006). Caltrans' request for a ruling that

§ 143(*o*) does not apply to the Toll Road Lease is, in essence, a request to exercise judicial restraint.

### A. Whether Streets and Highways Code § 143(*o*) Applies to the Toll Road Lease.

 Caltrans contends that § 143(*o*) does not apply retrospectively to leases entered into pursuant to design franchise agreements executed before § 143(*o*) became effective. It relies upon the basic canon of statutory interpretation that a statute does not operate retrospectively unless the Legislature plainly intended it to do so. *Western Security Bank. v. Superior Court,* 15 Cal.4th 232, 243, 62 Cal. Rptr.2d 243, 933 P.2d 507 (1997). A statute has retrospective effect if it "substantially changes the legal consequences of past events." *Western Security Bank,* 15 Cal.4th at 243, 62 Cal.Rptr.2d 243, 933 P.2d 507.

According to Caltrans, application of § 143(*o*) to the Toll Road Lease would be retrospective because it would substantially change the legal consequences of the DFA. Caltrans does not explain *how* the legal consequences of the DFA would substantially change if § 143(*o*) were applied to the Toll Road Lease. Rather, it argues that the terms of the DFA do not comply with the current version of § 143 because the current version contemplates a broader variety of projects and contains more burdensome procedural requirements to award a contract. It also argues the SR 125 Toll Road project is not contemplated under the current statute.[5]

 Caltrans' arguments do not make sense. There is no need for the current version of § 143 to contemplate awarding the SR 125 Toll Road project since Caltrans had already awarded it to the Debt-

---

**5.** Caltrans presented no evidence in support of these arguments.

or. Further, as explained by *Western Security Bank,* a statute does not operate retrospectively simply because its application depends on facts or conditions in existence before its enactment. *Id.* at 243, 62 Cal.Rptr.2d 243, 933 P.2d 507. It explains that a statute that *clarifies,* rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. *Id.* Thus, if the surrounding facts and circumstances indicate the Legislature amended a statute in an effort to clarify a statute's true meaning, there is no retrospective effect because the true meaning of the statute remains the same. *Id.*

Caltrans has not considered that § 143(*o* ) merely clarified the Legislature's existing intent to treat the § 143 transportation facilities, including the Lease, as public property for the purpose of exempting them from taxation. The 1989, 1990 and 2002 versions of Streets and Highways Code § 143(b) expressly provided: "Facilities constructed by a private entity pursuant to this section shall, at all times, be owned by the state." All three versions deemed the facilities to be public property. Logically, they were silent on the issue of taxes because public property is automatically tax exempt under Article XIII of the Constitution.

The preamble to the 2006 amendment to § 143 confirms that § 143(*o* ) was likely a clarification. The preamble declares that the amendment modifies the existing procedures for the Legislature to approve or reject a negotiated lease, but it is silent about a modification of existing law to make the lease tax exempt. *See* A.B. 521, 2005–06 Leg., 2155 Sess. (Ca. 2006).

■ Regardless, application of § 143(*o* ) to the Toll Road Lease is not retrospective. Section 143(*o* ) speaks to "a lease to a private entity," not design franchise agreements. It deems "a lease to a

private entity" entered pursuant to § 143(*o* ) to be "public property" exempt from taxation. A fundamental rule of statutory construction is that a court must first look to the words of the statute itself to ascertain legislative intent. *Transamerica Occidental Life Ins. Co. v. State Bd. of Equalization,* 232 Cal.App.3d 1048, 1056, 284 Cal.Rptr. 9 (1991). Where the statutory language is clear and unambiguous, there is no need to turn to the legislative history, and the sole function of the courts is to enforce the statute as written. *Transamerica Occidental,* 232 Cal.App.3d at 1056, 284 Cal.Rptr. 9. Here, no one has contended there is anything unclear or ambiguous about "a lease to a private entity." The Toll Road Lease is "a lease to a private entity" entered pursuant to § 143 after the enactment of § 143(*o* ). The plain language in § 143(*o* ) deems it to be public property for a public purpose exempt from taxation, applying the statute *prospectively.*

■ Further, the Court does not agree that the Toll Road Lease is "part and parcel" of the earlier DFA. Although the agreements are related, the Toll Road Lease is a separate agreement entered into in 2007. Any reasonable construction of the DFA is that the Debtor's right to the Toll Road Lease depended upon its satisfaction of several conditions, most obviously, completion of SR 125 Toll Road using private financing and transferring the underlying land to Caltrans. The DFA had a copy of the contemplated form of lease attached, but it was not executed and its terms remained subject to change.

Nothing in the Court's earlier *In re South Bay Expressway* opinion alters its conclusion that the DFA and Toll Road Lease are separate agreements. In a completely different factual context, the Court stated that execution of the DFA vested the Debtor with a bundle of private

property rights, including the right to enter into the 35–year lease, against which mechanic's liens could attach. *South Bay Expressway,* 434 B.R. at 600. The Court did not examine the conditions precedent to executing the Toll Road Lease because they were not germane to that opinion. The Court rejected the argument that the enactment of § 143(*o* ) caused the Debtor's distinct private property rights to become public property, instead construing § 143(*o* ) as speaking to an exemption for *purposes of taxation. Id.* at 600 (emphasis in original). The Court recognized that, in the absence of a statutory tax exemption, Debtor's private leasehold interest would be subject to taxation the same as any other private real property interest. *Id.* However, the Court had no reason to consider the constitutionality of this statutory tax exemption, or whether this statutory tax exemption was truly new or merely intended to clarify the Legislature's prior intentions.

Finally, the Court does not believe that Streets and Highways Code § 143.1 has any relevance to this dispute.[6] Section 143.1 is the result of a bill introduced in the Senate as S.B. 463, and enacted in 2006. Section 143(*o* ) was part of a separate bill introduced in the Assembly as A.B. 521, also enacted in 2006. Section 143.1 is project-specific. Its purpose is to extend the time period for the Debtor's collection of tolls from 35 years to 45 years, and to authorize SANDAG to collect tolls thereafter under certain terms and conditions.

Section 143.1(a)(3) specifies that, except for these authorized amendments to the DFA and the Toll Road Lease, the parties' rights are not modified. From § 143.1(a)(3), Caltrans seems to argue that

if the Legislature had intended the § 143(*o* ) tax exemption to apply to the Toll Road Lease, it would have said so in § 143.1. The Court does not agree. By placing the tax exemption in § 143(*o* ), the Legislature applied it to all leases to private entities entered pursuant to § 143, not just the Toll Road Lease.

**B. Whether the Tax Exemption Created by Streets and Highways Code § 143(*o* ) is Unconstitutional?**

■ The next question is the constitutionality of § 143(*o* ). The Court's analysis must start with the Constitution itself. Article XIII, § 1(a) of the Constitution expresses a clear mandate that all property must be taxed, except as declared in the Constitution itself or by the laws of the United States.[7] *Lundberg v. Alameda County,* 46 Cal.2d 644, 648, 298 P.2d 1 (1956); *Lucas v. County of Monterey,* 65 Cal.App.3d 947, 952, 135 Cal.Rptr. 707 (1977).

■ Article XIII, § 3 of the Constitution lists the property that is mandatorily tax exempt. These tax exemptions are self-executing, meaning that they require no legislative action to permit the tax exemption. *Sutter Hospital of Sacramento v. City of Sacramento,* 39 Cal.2d 33, 35, 244 P.2d 390 (1952). The property includes: "[p]roperty owned by the State" [§ 3(a) ]; and "[p]roperty owned by a local government ..." [§ 3(b) ]. Additionally, Article XIII, § 3 exempts certain property that is used for public purposes such as property used for libraries and museums that are free and open to the public [§ 3(d) ]; property used for public schools, community and state colleges, and state universities [§ 3(d) ]; buildings, land and

---

6. Caltrans raised this issue for the first time in oral argument at the continued hearing.

7. There is no federal law at issue in this dispute.

equipment used exclusively for educational purposes by a nonprofit institution [§ 3(e)]; and buildings, land and equipment used exclusively for religious worship [§ 3(f)]. Article XIII, § 3 also exempts certain other property for public policy reasons, such as cemeteries, growing crops, designated trees, dwellings, certain vessels, certain personal property, a debt secured by land, and certain property of armed services personnel and veterans [§§ 3(g)-(p)].

■■■■ Article XIII, § 4 of the Constitution lists the property that the Legislature may choose to exempt from taxation, either in whole or in part. Because the tax exemptions in Article XIII, § 4 are permissive in nature, legislative action is required in order to put into effect an exemption for this property. *Sutter Hospital*, 39 Cal.2d at 35, 244 P.2d 390. The property includes: the home of a disabled veteran [§ 4(a)]; property used exclusively for religious, hospital or charitable purposes [§ 4(b)]; property owned by four named educational and charitable institutions [§ 4(c)]; and real property used for parking lots for religious institutions exempt under Article XIII, § 3(f) [§ 4(d)]. Except for the constitutionally authorized exemptions, it is beyond the power of the Legislature to enact legislation exempting from taxation anything capable of private ownership. *Crocker v. Scott*, 149 Cal. 575, 583–84, 87 P. 102 (1906).

The Debtor does not contend that the Legislature invoked its permissive authority in Article XIII, § 4 of the Constitution in enacting § 143(*o*). The Debtor's position is that the Legislature enacted § 143(*o*) to *clarify* the "public property" tax exemption in Article XIII, § 3.[8] The Debtor contends that § 143(*o*) clarifies

that a private leasehold interest in a § 143 transportation demonstration project is "public property" exempt from taxation because it is used for a public purpose. Thus, § 143(*o*) implements the constitutional mandate in Article XIII, § 3 that "public property" is exempt from taxation.

■■■ The Court recognizes that it must tread carefully in second guessing the validity of legislative actions. It must apply the well-settled rule that " '[i]n considering the constitutionality of a legislative act [the court will] presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, [the court] must uphold the Act …' " *Mission Housing Development Co. v. City and County of San Francisco*, 59 Cal.App.4th 55, 78–79, 69 Cal.Rptr.2d 185 (1997) (citation omitted).

■■■■ Further, there is also a "strong presumption in favor of the Legislature's interpretation of a provision of the Constitution." *Methodist Hosp. of Sacramento v. Saylor*, 5 Cal.3d 685, 692, 97 Cal.Rptr. 1, 488 P.2d 161 (1971). Where the language of the Constitution is doubtful or obscure in meaning, or is capable of various interpretations, the Legislature's construction of the language is presumptively constitutional. *Saylor*, 5 Cal.3d at 692–93, 97 Cal.Rptr. 1, 488 P.2d 161. However, where there is an unmistakable conflict between the statute and the Constitution, the statute is unconstitutional and, therefore, void. *Id.*

■■■■ The Court is not persuaded that § 143(*o*) merely clarifies the meaning of Article XIII, § 3(a) of the Constitution. The rules of construction and interpreta-

---

**8.** The Debtor did not indicate which provision in Article XIII, § 3, the Legislature was clarifying, but § 3(a)—exempting "[p]roperty

owned by the State"—is the only provision that would factually apply.

tion that are applicable to statutes also apply in interpreting constitutional provisions. Thus, the court's primary task is to determine the enacting body's intent. *Delaney v. Superior Court*, 50 Cal.3d 785, 798, 268 Cal.Rptr. 753, 789 P.2d 934 (1990). To determine intent, a court must first turn to the words themselves for the answer. *Delaney*, 50 Cal.3d at 798, 268 Cal. Rptr. 753, 789 P.2d 934. Where the words in a constitutional provision are clear and unambiguous, the plain meaning governs and there is no room for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute), or of the voters (in the case of a constitutional provision adopted by the voters), to determine meaning. *Id.* at 798, 268 Cal.Rptr. 753, 789 P.2d 934; *Silicon Valley Taxpayers Ass'n, Inc. v. Santa Clara County Open Space Authority*, 44 Cal.4th 431, 444–45, 79 Cal.Rptr.3d 312, 187 P.3d 37 (2008).

■■■ Here, the Debtor has not addressed *why* the language in Article XIII, § 3(a) needs a statute to clarify its meaning.[9] Nor has the Debtor offered any extrinsic evidence of the enacting body's intent in drafting the language in Article XIII, § 3(a). Likewise, the Court has not found any authority finding the phrases "public property" or "property owned by the State" unclear or ambiguous in their meaning.[10] Finally, the Court does not agree that § 143(*o* ) was necessary to implement Article XIII, § 3 because these exemptions are self-executing.[11]

Rather, the Legislature enacted § 143(*o* ) to expand meaning of "public property" to include privates leases of § 143 public transportation demonstration facilities because it wanted to insulate these leases from the burdens of taxation since they serve a public purpose. The Legislature's act of reclassifying these privately-owned leases as "public property" in order to relieve them from the burdens of taxation is "positively and certainly" in conflict with the Constitution because the Constitution does not authorize an exemption for this type of a privately-owned property interest. *See Saylor*, 5 Cal.3d at 691, 97 Cal.Rptr. 1, 488 P.2d 161. It is well settled that the Constitution mandates that all property capable of private ownership must be taxed; it restricts the Legislature's power to grant tax exemptions, except as authorized by the Constitution itself. *Crocker v. Scott*, 149 Cal. 575, 583–

---

**9.** Again, Article XIII, § 3(a) is the only provision that could factually apply.

**10.** To the contrary, California Revenue and Taxation Code § 202(a)(4) defers to the Constitution, providing that: the exemption of "property belonging to this state, a county, or a city" is "as specified" in Article XIII, §§ 3(a) and (b) of the Constitution. California Civil Code § 669 provides: "OWNER. All property has an owner, whether that owner is the State, and the property public, or the owner an individual, and the property private." Black's Law Dictionary defines public property as: "State-or-community-owned property not restricted to any one individual's use or possession." (9th ed. 2009); *accord* 58 Cal. Jur.3d, *State of California*, § 55 (May 2011) (explaining that all property within the limits of this State, which does not belong to any person, belongs to the people, and whenever the title to any property fails for want of a private owner, it reverts to the people.) Thus, the Court's research confirms the obvious: the phrases "public property" and "property owned by the State" exclude privately-owned property interests.

**11.** The Legislature has enacted Revenue and Taxation Code § 202(a)(4) exempting public property from taxation "as specified" in Article XIII, § 3(a) and (b) of the Constitution. Although unnecessary, this statute is valid since the scope of the exemptions are "no broader than" those authorized by Article XIII, §§ 3(a) and (b) of the Constitution. *See Connolly v. County of Orange*, 1 Cal.4th 1105, 1119 n. 14, 4 Cal.Rptr.2d 857, 824 P.2d 663 (1992).

84, 87 P. 102 (1906); *Connolly v. County of Orange,* 1 Cal.4th at 1119 n. 14, 4 Cal. Rptr.2d 857, 824 P.2d 663.

The Debtor's cited cases are inapposite. They involved taxation of a public entity, or a tax exemption authorized by the Constitution itself. *E.g., Lundberg v. Alameda County,* 46 Cal.2d 644, 651, 298 P.2d 1 (1956) (upholding a statutory tax exemption for property used for charitable purposes since Article XIII of the Constitution empowered the Legislature to grant the exemption); *Anderson–Cottonwood Irr. Dist. v. Klukkert,* 13 Cal.2d 191, 197–98, 88 P.2d 685 (1939) (invalidating taxes assessed against a governmental entity for its use of public property); and *Gaspard v. Edwin LeBaron, Inc.,* 107 Cal.App.2d 356, 359–60, 237 P.2d 278 (1951) (holding that plaintiff's tax deed did not include a strip of land that had been formally dedicated and accepted for use as a public road since it was not privately owned, so no one owed the taxes).

Likewise, *City of Oakland v. Albers Bros. Milling Co.,* 43 Cal.App. 191, 184 P. 868 (1919) is distinguishable. In that case, the city sought to collect from the private developer taxes levied against the improvements the developer had constructed on public land. 43 Cal.App. at 192, 184 P. 868. The city had leased the public land to the developer to construct the improvements, and the lease permitted the developer to operate the improvements and collect revenues. *Id.* Critically, the lease contained an express provision that the "[improvements] when so constructed shall become and remain the property of the lessor." *Id.* The court addressed the "sole question" of whether the city could tax the developer for the improvements. *Id.* The court held the city could not tax the developer because the developer did not own the improvements since they were ex-

pressly owned by city. *Id.* at 193, 184 P. 868.

Here, the County is taxing the Debtor's possessory leasehold interest, not the publicly-owned SR 125 Toll Road. There is a long line of California Supreme Court authority holding that a private entity's possessory interest in public property is private property, and is subject to taxation. *Connolly,* 1 Cal.4th at 1117–118, 4 Cal. Rptr.2d 857, 824 P.2d 663 (1992); *Texas Co. v. Los Angeles County,* 52 Cal.2d 55, 63, 338 P.2d 440 (1959); *Kaiser Co. v. Reid,* 30 Cal.2d 610, 618, 184 P.2d 879 (1947); *San Pedro, L.A. & S.L.R. Co. v. City of Los Angeles,* 180 Cal. 18, 22, 179 P. 393 (1919); *State v. Moore,* 12 Cal. 56, 71 (1859) (Terry, J., concurring).

### C. Whether § 143(*o* ) is Unconstitutional Only As Applied to This Lease?

 Finally, the Court must consider whether § 143(*o* ) is unconstitutional only as applied to the Toll Road Lease. In determining issues of constitutionality, a court must presume that the Legislature understood its constitutional limits in passing a law, and it intended circumstances in which the law would be constitutional. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1146, 131 Cal. Rptr.2d 29, 63 P.3d 937 (2003). Thus, a court should refrain from declaring a statute facially unconstitutional unless the statute is in total conflict with the Constitution, and its scope cannot be limited except by rewriting the statute. *Rupf v. Yan,* 85 Cal.App.4th 411, 423–24, 102 Cal. Rptr.2d 157 (2000). A statute should not be set aside based upon any unclear or uncertain meaning to be given to the Constitution. *Van Harlingen v. Doyle,* 134 Cal. 53, 56, 66 P. 44 (1901). "But where [a statute's] infraction is clear and unmistakable, the duty of the court is plain, and

should be fearlessly performed." *Van Harlingen,* 134 Cal. at 56, 66 P. 44.

In this case, Caltrans believes that § 143(*o*) could be constitutionally applied to certain projects authorized under the current version of § 143. It argues that the leases for certain projects may be structured so that they would not rise to the level of a taxable property interest. It speculates that a developer could complete a project where no tolls are collected, and the State would repay the developer for its investment over time, using public funds, and pay the developer to operate the project so that the facility would be open to the public.

Although § 143 has been amended, the text in § 143(*o*) remains unchanged. On its face, § 143(*o*) continues to speak only to "a lease to a private entity." A privately-owned lease cannot be public property as a matter of law. The distinguishing characteristics of a leasehold estate are that the lease gives the lessee the exclusive right to possession of the premises against all the world, including the owner, for a limited and ascertained period of time. *Howard v. County of Amador,* 220 Cal.App.3d 962, 972, 269 Cal.Rptr. 807 (1990). It is well established that when there is a lease to a private owner of land owned by a public entity, the reversion is exempt from taxation but the possessory right under the lease is subject to assessment and taxation. *City of Desert Hot Springs v. County of Riverside,* 91 Cal.App.3d 441, 449, 154 Cal.Rptr. 297 (1979) (citing *De Luz Homes, Inc. v. County of San Diego,* 45 Cal.2d 546, 563, 290 P.2d 544 (1955)). Even shared use of property with others does not defeat taxability. *Scott–Free River Expeditions, Inc. v. County of El Dorado,* 203 Cal.App.3d 896, 908–10, 250 Cal.Rptr. 504 (1988).

Given that a lease creates a separately-owned estate in real property, the Court cannot construe § 143(*o*) in a manner consistent with the Constitution. Section 143(*o*) speaks to "a lease to a private entity," not a lease to a public entity. It deems this privately-owned lease to be public property in order to fit it into a Constitutionally authorized exemption from taxation. However, a privately-owned property interest cannot be public property. Civ.Code § 669. There is no way to rewrite § 143(*o*) to legally turn a lease to a private entity into publicly-owned property; nor was a statute necessary if the private lease were truly public property since Article XIII, § 3(a) of Constitution is self-executing.

## V.

## CONCLUSION

The Court holds that § 143(*o*) applies prospectively to the Debtor's Toll Road Lease entered into after the date of its enactment. Section 143(*o*) deems the Debtor's property interest created by the Toll Road Lease to be public property exempt from taxation, but it is facially unconstitutional. The Court recognizes that the Legislature sought to relieve private lessees of these § 143 transportation demonstration projects from the burdens of taxation because these leases serve a public purpose. But, calling a privately-owned lease "public property" is an impermissible fiction under the Constitution.

Although the Constitution authorizes tax exemptions for certain private property interests for various public policy reasons, a lease to a private entity of a § 143(*o*) transportation demonstration project is not listed. Accordingly, the Court concludes that the Legislature's act of reclassifying this private property interest to be public property in order to escape the Constitutional mandate of taxation is "positively and certainly" in conflict with the

Constitution. Because § 143(*o*) is unconstitutional, the Court denies the Debtor's motion for judgment on the pleadings and enters cross-judgment in favor of the County.

This Court's ruling involves an issue of first impression, and matters of public importance which implicate important questions of California law. The Court has concurrently prepared a judgment in accordance with this Memorandum Decision, and it will enter an order certifying the appeal directly to the Ninth Circuit pursuant to 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001, upon appropriate motion or stipulation presented at the time a Notice of Appeal is filed.