[Civ. No. 46507. First Dist., Div. Four. Jan. 7, 1980.]

PROGRESS GLASS COMPANY, INC., Plaintiff and Appellant, v. AMERICAN INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Reckas & Roboostoff and Nick T. Reckas for Plaintiff and Appellant.

Gerald R. Knecht and Tyler P. Bending for Defendant and Respondent.

OPINION

RATTIGAN, J.—Plaintiff Progress Glass Company, a corporation, furnished labor and materials as a subcontractor in the construction of a motel complex. A balance due it from the original contractor was not paid. Plaintiff commenced this action to recover the balance from de-

fendant American Insurance Company as the surety on a labor and materials payment bond given by the original contractor as the principal. The trial court granted defendant's motion for summary judgment on the ground that the action was barred by a provision in the bond requiring that the action be commenced within a specified one-year period. ■ ■■■ Plaintiff appeals from the order in which the motion was granted, but which also operates as a summary judgment dismissing the action.[1] We reverse it.

## Facts and Procedural Sequence

The parties agree that there is no material dispute concerning the facts, which may therefore be summarized from the full record. It supports the following recitals:

The motel complex was built in Contra Costa County by Ralph E. Carlsen Construction Company, a corporation (Carlsen), the original contractor under a written contract with the owners of the complex. The owners were a partnership, a corporation, and an individual. The partnership held a leasehold interest in the motel site under a long-term lease from the County of Contra Costa (County), which owned the land. The lease provided that the motel complex would be constructed on the site by the lessee. Paragraph XI of the lease obligated the lessee to provide a labor and materials payment bond, for the protection of the County, in an amount not less than 50 percent of the total estimated cost of the construction project. The paragraph also provided that the lessee would meet this obligation if and when its original contractor furnished "such bond . . . in like amount" naming the County "as an additional obligee of Lessee's principal and surety under such bond . . ."

---

[1] The trial court made the order on October 4, 1978. It therein "ORDERED that Defendant's Motion for Summary Judgment is granted, and that judgment be entered on behalf of Defendant American Insurance Company and against Plaintiff, Progress Glass Company." No separate "judgment" was thereafter "entered" in favor of defendant. Plaintiff states in its notice of appeal that it appeals "from the Judgment entered . . . on October 5, 1978."

An appeal may be taken from a summary judgment entered pursuant to an order granting a motion for one (Code Civ. Proc., § 437c), but not from the order itself. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 68, par. (c), p. 4082; id., § 59, par. (a), pp. 4074-4075.) The October order, however, is entitled "Order *And Judgment* Re Motion For Summary Judgment." (Italics added.) It is also stamped with indicia that it was in fact "entered," as a judgment, in a judgment book kept pursuant to section 668 of the Code of Civil Procedure. These circumstances demonstrate that plaintiff's notice properly refers to the order as a "judgment," and that the appeal has been taken from a summary judgment dismissing the action. We hereinafter refer to the order of October 4, 1978, as a "judgment."

The lease took effect when the board of supervisors of the County approved its execution in a resolution adopted on September 21, 1971. The owners of the motel complex entered into the construction contract with Carlsen on March 8, 1972. The County had executed the lease as "Lessor," but was not a party to the construction contract. Copies of the board's resolution and the lease were recorded in the office of the county recorder on September 29, 1971. The construction contract was apparently not recorded.[2]

The bond involved in this litigation was executed by Carlsen and defendant on April 4, 1972. It is entitled "Labor & Material Payment Bond." Carlsen executed it as the "Principal," defendant as the "Surety." The bond cites no statute. It describes the construction contract and incorporates it, but by reference only. It provides that the principal and the surety "are held and firmly bound unto" the owners of the motel complex and the County, "as Obligee[s]...for the use and benefit of claimants as hereinbelow defined...." Its amount is $917,000, which appears to have been calculated at 50 percent of the contract price. The bond further provides that "the condition of this obligation is such that, if Principal [Carlsen] shall promptly make payment to all claimants as hereinafter defined,...then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however," to "conditions" specified in paragraphs numbered 1 through 4.

Paragraph 1 defines "claimant" to include any subcontractor furnishing "labor, material, or both" in the performance of the construction contract. Paragraph 3 effectively provides that an action on the bond by a "claimant" must be commenced within one year after the cessation of work on the contract by the principal (Carlsen).[3] The bond was acknowledged before a notary public on behalf of defendant, but it was not recorded in the office of the county recorder at any time. The lease, which was recorded there (see fn. 2, *ante*), referred to the bond but not

---

[2]Some of these details have been developed by inference from the record, which does not include a copy of the construction contract. It does include copies of the board's resolution and the lease, which bear a notation indicating that they were recorded on September 29, 1971.

[3]Paragraph 3 reads in pertinent part as follows: "No suit or action shall be commenced hereunder by any claimant...[a]fter the expiration of one (1) year following the date on which Principal ceased work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law."

to the one-year limitation provision. There was thus no public record of the provision.

Carlsen commenced work pursuant to the contract in 1972. Plaintiff furnished labor and materials in the work pursuant to a written subcontract executed with Carlsen on April 28, 1972. Carlsen ceased all work under the construction contract on January 31, 1973.

Plaintiff was not paid in full for its labor and materials. It brought an action on the 1972 subcontract and recovered a judgment for $5,024.97 against Carlsen on November 5, 1975. The judgment not having been satisfied, plaintiff commenced the present action for the recovery of the $5,024.97 from defendant as the surety on the 1972 bond. The complaint in this action was filed on January 14, 1977, after the expiration of the one-year period of limitation provided in paragraph 3 of the bond (i.e., more than one year after Carlsen had ceased work on Jan. 31, 1973) but within the four-year period prescribed in section 337, subdivision 1, of the Code of Civil Procedure.[4]

Defendant filed an answer to the complaint in which it alleged as an affirmative defense (among others) that Carlsen had ceased all work under the construction contract on January 31, 1973, and that "[p]laintiff is barred from any recovery upon...[the bond]...by virtue of having failed to file this action within the period set forth in such bond —one year following the date upon which [the] principal ceased work on said contract." Defendant subsequently made its motion for summary judgment on this ground, the motion was granted, and plaintiff appealed, as recited above.

*Review*

The trial court obviously reasoned that the provision of the bond imposing a one-year period of limitation on an action "commenced hereunder by any claimant" (see fn. 3, *ante*) was valid and enforceable against plaintiff, that the four-year statute of limitations did not apply (see fn. 4), and that the action was barred accordingly. ▪▪▪ Claiming error in these respects, plaintiff contends that the one-year provision

---

[4]Code of Civil Procedure section 337, subdivision 1, provides that "[a]n action upon any contract, obligation or liability founded upon an instrument in writing" must be commenced "[w]ithin four years." The record does not show the precise time at which plaintiff's cause of action on the bond accrued, but the parties agree that the action was commenced within the four-year period prescribed in this statute.

in the bond was invalidated by Civil Code section 3239 because the bond was not recorded.[5] This contention must be sustained.

Section 3239 applies by its terms to "any" unrecorded "payment bond given pursuant to any of the provisions of...[the]...chapter" in which the section appears. (See fn. 5, *ante.*) It appears in chapter 6 ("Payment Bond for Private Works," commencing with § 3235) of title 15 ("Works of Improvement," commencing with § 3082) of part 4 of division third of the Civil Code. It being undisputed that defendant's bond was never recorded, section 3239 operates to invalidate its one-year limitation provision if the bond was "given pursuant to any of the provisions" of chapter 6.

Defendant argues that the bond was not so "given" because it was not *required* by any provision of chapter 6, nor of any other statute; that it was consequently a "common law" payment bond, as distinguished from a "statutory" payment bond; and that its one-year limitation provision is valid because a so-called "common law bond" may impose obligations and limitations independently of statute.

There is substantial authority for this distinction between "common law" and "statutory" bonds, and for its application in appropriate cases. (See, e.g., *Rexroth & Rexroth, Inc.* v. *General Cas. Co.* (1966) 242 Cal.App.2d 363, 368-369, 373 [51 Cal.Rptr. 505]; *Evola* v. *Wendt Construction Co.* (1959) 170 Cal.App.2d 21, 23 [388 P.2d 498]. See also Cal. Surety and Fidelity Bond Practice (Cont.Ed.Bar 1969) Glossary, pp. xi ["Common law bond"], xiii-xiv ["Statutory bond"]; *id.*, §§ 5.1-5.5, pp. 39-42; Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 1972) § 9.1, pp. 222-223; Hall, *The Distinction Between Statutory and Common Law Bonds in California* (1919) 7 Cal.L.Rev. 20 [hereinafter cited as *Bonds in California*]; 11 C.J.S., Bonds, § 45, pp. 424-425.) This is not such a case because defendant's bond is "statutory."

---

[5]Statutory references after this point are to the Civil Code except where expressly indicated otherwise. Section 3239 provides as follows: "No provision in *any payment bond given pursuant to any of the provisions of this chapter* attempting by contract to shorten the period prescribed in Section 337 of the Code of Civil Procedure for the commencement of an action thereon shall be valid if such provision attempts to limit the time for commencement of action thereon to a shorter period than six months from the completion of any work of improvement, *nor shall any provision in any of such bonds attempting to limit the period for the commencement of actions thereon be valid insofar as actions brought by claimants are concerned, unless such bond is recorded,* before the work of improvement is commenced, with the county recorder of the county in which the property referred to therein is situated." (Italics added.)

Section 3239 does not define the bond it reaches except by the term "any payment bond given pursuant to any of the provisions" of chapter 6. (See fn. 5, *ante*.) A more precise definition of that term does not appear elsewhere in chapter 6 or title 15, but it may be reconstructed from the full statutory context. Chapter 6 is entitled "Payment Bond for Private Works." ■ A chapter heading may not be used in aid of interpreting a code which includes a provision prohibiting this (*In re Halcomb* (1942) 21 Cal.2d 126, 130 [130 P.2d 384]), but no such provision appears in the Civil Code. (See §§ 1-20.) (Compare, e.g., Food & Agr. Code, § 16; Gov. Code, § 6; Veh. Code, § 7.) We may accordingly resort to the heading of chapter 6 in construing its provisions, including section 3239. (*Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260, 263 [44 P.2d 320]; *People* v. *Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481].) This means that "any payment bond given pursuant to any of the provisions of this chapter," as that term is used in section 3239, must first be a "payment bond" given for a "private work."

Defendant's bond is a "payment bond" within the meaning of section 3096, which defines that term for all purposes of title 15.[6] The title includes no definitions of "private work," or "private work of improvement," although the latter term appears in the title at least once. (See § 3235, quoted in fn. 8, *post*.) The terms "public work" and "work of improvement" are respectively defined in section 3100 (read in context with § 3099) and in section 3106.[7] The construction project to

---

[6]Section 3096 appears in chapter 1 of title 15. Chapter 1 is entitled "General Definitions." It commences with section 3082, which provides that "[u]nless the context otherwise requires, the provisions in this chapter govern the construction of this title." Section 3096 reads in pertinent part: "'Payment Bond' means a bond with good and sufficient sureties which is conditioned for the payment in full of the claims of all claimants and which also by its terms is made to inure to the benefit of all claimants so as to give such persons a right of action upon such bond...in a separate suit brought on such bond: Either an owner or an original contractor may be the principal upon any payment bond." The features of defendant's bond that bring it within this definition are recited in the text preceding footnote 3, *ante*.

Section 3085, which also appears in chapter 1, defines "claimant" as "any person entitled under this title...to recover on any payment bond...." It is undisputed that plaintiff is a "claimant," both within this definition and as defined in paragraph 1 of defendant's bond.

[7]These sections also appear in chapter 1 of title 15, commencing with section 3082. (See fn. 6, *ante*.) Quoted in their numerical order, and in full or as pertinent, they respectively provide:

"3099. 'Public entity' means the state, Regents of the University of California, *a county*, city, district, public authority, public agency, and any other political subdivision or public corporation in the state." (Italics added.)

"3100. 'Public work' means any work of improvement contracted for by a public entity."

which plaintiff furnished labor and materials was a "work of improvement" within the meaning of section 3106. (See fn. 7, *ante.*) It was therefore a "work" for purposes of title 15, in which the terms "work of improvement" and "work" are used synonymously and interchangeably. (See § 3100 as quoted *ibid.* See also §§ 3086, 3103, 3179, 3181, 3183.)

The construction project was agreed upon by the County in its lease of the motel site, and the County is a "public entity" within the meaning of section 3099. (See fn. 7, *ante.*) However, it was not a party to the construction contract executed by the owners of the project and Carlsen. The project was therefore not a "public work," within the meaning of section 3100, because it was not "contracted for by a public entity" within the same meaning. (See *ibid.*) It being a "private work" by elimination, defendant's bond was a "payment bond" for a "private work" for purposes of section 3239 and the other provisions of chapter 6.

■ The bond having met those purposes as a matter of definition, the remaining question is whether it was actually "given pursuant to any of the provisions" of chapter 6 within the meaning of section 3239. The first such "provisions" appear in sections 3235 and 3236, with which the chapter commences. Section 3235 provides that the local recordation of a construction contract, *and* of a payment bond by the original contractor in an amount not less than 50 percent of the contract price, shall have the effects (1) of limiting the owner's liability on lien claims to the amount of the price and (2) of permitting the claimants to recover any deficiency from the contractor and his sureties on the bond alone.[8] Section 3236 explicitly provides that the "intent and purpose" of section 3235 is to limit a recording owner's liability to the contract price "in all cases," and that he may "protect himself" for this

"3106. 'Work of improvement' includes but is not restricted to the construction...of any building....Except as otherwise provided in this title, 'work of improvement' means the entire structure or scheme of improvements as a whole."

[8] Section 3235 reads as follows: "In case the original contract for a private work of improvement is filed in the office of the county recorder of the county where the property is situated before the work is commenced, *and* the payment bond of the original contractor in an amount not less than 50 percent of the contract price named in such contract is recorded in such office, then the court must, where it would be equitable so to do, [1] restrict the recovery under lien claims to an aggregate amount equal to the amount found to be due from the owner to the original contractor and [2] render judgment against the original contractor and his sureties *on such bond* for any deficiency or difference there may remain between such amount so found to be due to the original contractor and the whole amount found to be due to claimants." (Italics and bracketed numerals added.)

purpose "by exacting" a payment bond which will accomplish the purpose when it is recorded with the construction contract.[9]

The obligation to provide *a* payment bond, covering the construction project in an amount not less than 50 percent of its estimated cost, was originally imposed on the lessee-owner in paragraph XI of its lease of the motel site from the County. The paragraph further provided that the lessee-owner could discharge the obligation by having its contractor execute a payment bond which was "in like amount" and named the County "as an additional obligee of the Lessee's principal and surety." The $917,000 bond executed by Carlsen and defendant, naming the County as an "additional obligee," served the purpose of discharging the lessee-owner's bond obligation to the County under the lease. This was accomplished, however, by naming the County on a bond whose primary purpose was to "protect" the owners as contemplated in sections 3235 and 3236 and in the lease as well.

The inference is clear that the owners pursued the primary purpose by "exacting" the bond from Carlsen as section 3236 explicitly authorized them to do. This means that the bond was "given pursuant to . . . provisions" of chapter 6 within the meaning of section 3239. It was thus a "statutory bond," the definition of which is met by a bond given "pursuant to" (or "under," or as "permitted by") a statute which does not actually require it and is not even mentioned in it. (See Cal. Surety and Fidelity Bond Practice, *op. cit. supra,* Glossary, pp. xi ["Common law bond"] and xiii ["Statutory bond"]; *id.,* §§ 5.1-5.2, pp. 39-40; *Bonds in California, supra,* 7 Cal.L.Rev. 20 at p. 24 et seq. and particularly at p. 28, fn. 20.)

The bond having been "given pursuant to . . . provisions of chapter 6," section 3239 applies to it with the following consequences: The failure to record it invalidates its provision imposing a one-year period of limitation within which an action on it by a "claimant" must be commenced. Section 3239 is thus a "law" which "prohibits" the limitation as contemplated by the express terms of the provision. (See fn. 3, *ante.*) Those terms operate to amend the limitation "so as to be equal to

---

[9]Section 3236 reads: "It is the intent and purpose of Section 3235 to limit the owner's liability, *in all cases,* to the measure of the contract price where he shall have filed or caused to be filed in good faith his original contract and recorded a payment bond as therein provided. It shall be lawful for the owner *to protect himself* against any failure of the original contractor to perform his contract and make full payment for all work done and materials furnished thereunder *by exacting such bond* or other security as he may deem necessary." (Italics added.)

the minimum period of limitation permitted by such law" (see *ibid.*), which is the four-year period prescribed in section 337, subdivision 1, of the Code of Civil Procedure. (See fn. 4.) Because the bond thus invokes the four-year period by its own terms, the action is not barred. (See *ibid.*) The result comports with the clear purpose of section 3239, which is to protect subcontractors and other "claimants" against being denied the coverage of a bond by a provision in it of which they have no notice.

The summary judgment entered on October 5, 1978, is reversed.

Caldecott, P. J., and Poché, J., concurred.