[No. B228930. Second Dist., Div. Three. May 21, 2012.]

CALIFORNIA PAVING & GRADING CO., INC., Plaintiff and Appellant, v. LINCOLN GENERAL INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Gill and Baldwin, Kirk S. MacDonald and Stanley Haren for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, Mark A. Oertel and Julissa Galvan for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant California Paving & Grading Co., Inc. (hereafter, Paving or plaintiff), a subcontractor, appeals a judgment of dismissal following the sustaining without leave of a demurrer interposed by

defendant and respondent Lincoln General Insurance Company (Lincoln) to Paving's second amended complaint seeking recovery on a payment bond.

The essential issue presented is whether the instant contract was for public work or for private work. The proper characterization of the nature of the contract determines whether this action is governed by Civil Code section 3097 (preliminary 20-day notice for private work)[1] or by section 3098 (preliminary 20-day notice for public work). The nature of the contract also determines whether Paving's lawsuit is governed by the limitations period applicable to an action on a public works payment bond (§ 3249), or by a longer limitations period.

We conclude the instant subdivision improvement work constituted a "work of improvement contracted for by a public entity" and therefore amounted to a public work within the meaning of section 3100.

Paving failed to allege it served a preliminary notice in compliance with the statutory scheme applicable to payment bonds on public works. (§§ 3098, 3252.) Therefore, its action against Lincoln, the surety on the bond, is barred. Accordingly, the judgment of dismissal is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Facts.*[2]

This matter arises out of a subdivision improvement agreement and contract (the Agreement) between a private developer, 26 Moorpark LLC (Moorpark), and the City of Los Angeles (the City). As a condition for approval of the final map for Tract No. 65651, the Agreement required the subdivider, Moorpark, at its "own cost and expense, to construct and install all public improvements required in and adjoining and covered by the final map." The Agreement estimated the cost of the improvements at $195,000, and required Moorpark to file or deposit "a good and sufficient PAYMENT SECURITY for labor and materials in an amount not less than fifty (50) percent" of the estimated cost of the improvements.

In accordance with the Agreement, Moorpark obtained a "subdivision labor and material payment bond" in the amount of $97,500 from Lincoln, the surety.

Moorpark entered into a prime contract with Masada Development, Inc. (Masada), a licensed general contractor, for the construction of the public improvements.

---

[1] All further statutory references are to the Civil Code, unless otherwise specified.

[2] The facts are gleaned from the record.

Masada then entered into a subcontract with Paving, in the sum of $51,535, under which Paving agreed to perform street paving and asphalt work in connection with the public improvements, at the intersection of Wortser Street and Moorpark Street in Studio City.

On January 20, 2009, Paving completed its work but was not paid.

In June 2009, Paving filed suit against Moorpark and Masada to recover for the work it performed under the subcontract.

On October 29, 2009, Moorpark filed for bankruptcy. Masada likewise has filed for bankruptcy.

### 2. *Proceedings.*

#### a. *Pleadings.*

On March 12, 2010, Paving filed suit against Lincoln, the surety, to recover on the labor and material payment bond which Moorpark had filed with the City.

The operative second amended complaint pled a single cause of action. It alleged, inter alia, Paving was an intended beneficiary of the bond and was entitled to recover against Lincoln the sum of $55,958 plus interest thereon, from the completion date of January 20, 2009.

#### b. *Lincoln's demurrer.*

Lincoln demurred to the second amended complaint on the ground it was barred by the applicable statute of limitations and therefore failed to state facts sufficient to state a cause of action. Lincoln's arguments were twofold:

First, Paving failed to make a timely claim on the bond in accordance with section 3252. Lincoln asserted that to make a claim on a payment bond, a claim must give written notice to the principal and surety on the bond within 15 days after recordation of a notice of completion, or if no notice of completion has been recorded, within 75 days after completion of the work of improvement. Here, there was no allegation as to whether a notice of completion had been filed. However, Paving pled it completed the work on January 20, 2009. Thus, Paving had 75 days, until April 6, 2009, to make a claim to the surety on the bond. However, Paving did not make a written claim to Lincoln until it filed the instant lawsuit nearly one year later, on March 12, 2010.

Lincoln further contended that more importantly, Paving failed to file its lawsuit within the prescribed statutory period. Lincoln asserted that pursuant to the statutory scheme, Paving had 90 days after completion of its work on January 20, 2009, to serve a stop notice. (§ 3184, subd. (b).) The deadline for filing a stop notice was April 20, 2009. Paving then had six months after the expiration of the period in which a stop notice may be filed, i.e., until October 20, 2009, to file suit against Lincoln. (§ 3249.) Therefore, Paving's lawsuit against Lincoln, which was not filed until March 12, 2010, was time-barred.

 c. *Paving's opposition to the demurrer.*

In opposition, Paving contended the improvements for which the bond was issued are subdivision improvements, not a public work within the meaning of the Civil Code sections. Therefore, the payment bond is not a public works payment bond and the statute of limitations set forth in section 3249 does not apply to this action.

Paving reasoned that in the instant matter, the City entered into an agreement with Moorpark, a private developer, requiring Moorpark at its own expense to install improvements on publicly owned property; the City was not a party to the construction contract and the obligation to pay for the construction was that of Moorpark; and the construction work was not financed by public funds. Therefore, the subdivision improvement work was not a public works project within the meaning of section 3100, making section 3249's limitations period inapplicable.

Paving took the position the applicable statute of limitations for filing suit on the bond is the four-year statute of limitations for a contract action under Code of Civil Procedure section 337, and therefore its action was clearly timely.

 d. *Hearing and ruling.*

On October 8, 2010, the matter came on for hearing. After hearing argument of counsel, the trial court adopted its tentative ruling as the final ruling in the matter and sustained Lincoln's demurrer to the second amended complaint without leave to amend. The trial court's written ruling states in pertinent part:

"It appears from the face of the complaint that the action is barred by the limitations periods for filing claims and suits against sureties on payment bonds with respect to public works.

"*Plaintiff's written notice of the claim on the bond was untimely.* At the very latest, plaintiff had 75 days from completion of the work of improvement to give the principal and surety on the bond written notice of a claim against the payment bond. [(§ 3252.)] . . .

"*In addition, this suit was untimely.* An action against a surety on a payment bond may be brought by any claimant at any time after the claimant has ceased his or her performance and before the expiration of six months after the period in which stop notices may be filed under Civil Code section 3184. See Civil Code section 3249. Here, plaintiff completed the work of improvement on January 20, 2009, had until April 20, 2009 (90 days) to serve a stop notice and had until October 20, 2009 (6 months) to file this suit. Accordingly, this suit was filed on March 12, 2010, five months too late.

"The court does not find persuasive the argument that these statutory deadlines do not apply because this is not a public work. Under Civil Code section 3100, a 'public work' means 'any work of improvement contracted for by a public entity' and section 3099 defines a 'public entity' to include a city. The contract attached as Ex. A to the Second Amended Complaint is 'made and entered into, by and between the CITY OF LOS ANGELES, hereinafter designated as the CITY; and 26 MOORPARK, LLC . . . .' It is on its face a contract for a public improvement contracted for by a public entity. The plaintiff cites no case which would permit the court to ignore the statutory definition of a public work in favor of one fashioned by the plaintiff." (Italics added.)

In denying leave to amend, the trial court noted Paving already had been permitted an opportunity to correct the defects in its pleading, and Paving's opposition papers "fail[ed] to identify what facts could be added to avoid the bar of the various limitations periods set forth above."

The trial court entered a judgment of dismissal in favor of Lincoln. This timely appeal followed.

## CONTENTIONS

Paving contends its action is not barred by section 3252 (failure to serve 20-day *public work* preliminary bond notice pursuant to section 3098) because it pled service of a 20-day preliminary notice pursuant to section 3097 (pertaining to private work) and therefore it substantially complied with section 3098.

With respect to the statute of limitations issue, Paving contends the trial court erred in ruling the action is time-barred pursuant to the time limitation for actions against public works payment bonds (§ 3249) because the subdivision improvement work referred to in developer Moorpark's Agreement with the City and in the Lincoln payment bond was not a work of improvement of a public entity within the meaning of section 3100 and in any event, the action was timely under section 3249 because the time period under section 3249 begins to run only upon the completion of the entire project, not the date the bond claimant/subcontractor completes its work.

## DISCUSSION

### 1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Our review is de novo. (*Ibid.*)

### 2. *Paving's action is governed by the statutory scheme pertaining to payment bonds for public works.*

#### a. *Overview.*

Before "a claimant may recover on a payment bond on a *public works* project, it must give a notice. The notice may be given either as a 20-day preliminary notice pursuant to section 3098, or as a special notice provided in section 3252, subdivision (b)." (*American Buildings Co. v. Bay Commercial Construction, Inc.* (2002) 99 Cal.App.4th 1193, 1197 [121 Cal.Rptr.2d 539], italics added.)[3]

---

[3] Section 3252 states in pertinent part: "(a) . . . in order to enforce a claim upon any payment bond *given in connection with a public work,* a claimant shall give the 20-day public

Thus, the threshold issue is whether the instant contract was for public work. Section 3100 defines the term "public work" as "any work of improvement *contracted for by a public entity.*" (*Ibid.*, italics added.)

> b. *The subdivision improvement work constituted a public work within the meaning of section 3100 because it constituted a "work of improvement contracted for by a public entity."*

As set forth above, the subdivision improvement agreement and contract between the developer, Moorpark, and the City, a public entity, expressly required Moorpark, at its "own cost and expense, *to construct and install all public improvements* required in and adjoining and covered by the final map." (Italics added.)

In furtherance of Moorpark's contract with the City, Moorpark entered into a contract with the general contractor, Masada, for the construction of the public improvements.

Masada then entered into a subcontract with Paving "to furnish labor, services, equipment and materials required pursuant to the prime contract for the construction of the PUBLIC IMPROVEMENTS."

We observe that in its amended pleadings, Paving pled the subcontract was for "subdivision improvements" rather than "public improvements." That rephrasing by Paving does not alter the fact that the subcontract between Masada and Paving was for the "public improvements" required by the Agreement between the developer and the City.

Paving admits the subcontract was "for street paving and asphalt work at the intersection of 4411 Wortser Street and 13037 Moorpark Street in Studio City." Because said subcontract was in furtherance of the underlying Agreement between the City and the developer, the subcontract was for a "work of improvement contracted for by a public entity." (§ 3100.) Therefore, the trial court properly rejected Paving's argument this was not a public work.

> (1) *Progress Glass is unavailing to Paving.*

Paving relies on *Progress Glass Co. v. American Ins. Co.* (1980) 100 Cal.App.3d 720 [161 Cal.Rptr. 243] (*Progress Glass*) for the proposition that

---

work preliminary bond notice *as provided in Section 3098.* [¶] (b) . . . if the *20-day public work preliminary bond notice* was not given as provided in Section 3098, a claimant may enforce a claim by giving written notice to the surety and the bond principal as provided in Section 3227 within 15 days after recordation of a notice of completion. If no notice of completion has been recorded, the time for giving written notice to the surety and the bond principal is extended to 75 days after completion of the work of improvement." (Italics added.)

an agreement by a private developer to install improvements on publicly owned land, at its own expense, is not a public works project. However, *Progress Glass* is easily distinguished.

There, the County of Contra Costa (the County) entered into a long-term land lease with a private developer, which built a motel complex on the site. *"The County . . . executed the lease as 'Lessor,' but was not a party to the construction contract."* (*Progress Glass, supra,* 100 Cal.App.3d at p. 723, italics added.) The land lease "obligated the lessee to provide a labor and materials payment bond, for the protection of the County, in an amount not less than 50 percent of the total estimated cost of the construction project." (*Id.* at p. 722.) A subcontractor furnished labor and materials in the construction of the motel complex but was not paid. The subcontractor sued the surety to recover on a labor and materials payment bond given by the original contractor as the principal. The trial court granted the surety's motion for summary judgment on statute of limitations grounds. The reviewing court reversed. (*Id.* at pp. 721–722.)

In addressing whether the motel construction project was a public work within the meaning of section 3100, *Progress Glass* stated: "The construction project was agreed upon by the County in its lease of the motel site, and the County is a 'public entity' within the meaning of section 3099. [Citation.] *However, it was not a party to the construction contract executed by the owners of the project and Carlsen* [the original contractor]. *The project was therefore not a 'public work,' within the meaning of section 3100, because it was not 'contracted for by a public entity' within the same meaning."* (*Progress Glass, supra,* 100 Cal.App.3d at p. 727, italics added.)

Thus, in *Progress Glass,* the County did not contract for any work of improvement. The County was not a party to the motel construction contract. The sole parties to the construction contract were (1) the County's lessee and (2) Carlsen, the original contractor on the construction project. (*Progress Glass, supra,* 100 Cal.App.3d at p. 723.) The County's role was nothing more than "Lessor" under a long-term ground lease. (*Ibid.*)

Here, in contrast, the City contracted for a work of improvement. The City entered into the Agreement which required the developer "to construct and install all public improvements required in and adjoining and covered by the final map." Because Paving's subcontract was in furtherance of the underlying Agreement between the City and the developer, the subcontract was for a "work of improvement contracted for by a public entity." (§ 3100.)

> (2) *Paving's reliance on other statutory schemes is misplaced.*

Paving contends that rather than section 3100's broad definition of "public work" as "any work of improvement contracted for by a public entity," we should look to other statutes, which define public work more narrowly.

Paving invokes Public Contract Code section 7103.5, subdivision (a), which states: *"As used in this section:* [¶] (1) 'Public works contract' means a contract awarded through *competitive bids* by the state or any of its political subdivisions or public agencies. . . ." (Italics added.) Paving argues that because this subdivision improvement was not financed with public funds and was not competitively bid, it was not a public works contract.

Paving also relies on Labor Code section 1720, found within the prevailing wage law. (Lab. Code, § 1720 et seq.) Labor Code section 1720, subdivision (a), states: *"As used in this chapter,* 'public works' means: [¶] (1) Construction, alteration, demolition, installation, or repair work done under contract and *paid for in whole or in part out of public funds* . . . ." (Italics added.) Paving argues that because subdivision improvements are not financed with public funds and are not subject to prevailing wage requirements, they are not public works.

These arguments are unpersuasive. The definitions of public works found in Public Contract Code section 7103.5, subdivision (a), and Labor Code section 1720, subdivision (a), are expressly limited to the statutory schemes in which they are found. The limiting language in those statutes precludes those definitions from being imported into section 3100. Merely because the instant subcontract was not subject to competitive bidding or prevailing wage requirements does not support Paving's contention that its subcontract for public improvements was not a public work within the meaning of section 3100.

> (3) *Conclusion as to the nature of the contract.*

Paving's subcontract was for a "work of improvement contracted for by a public entity." (§ 3100.) Therefore, Paving's action is governed by the statutes governing suit on a payment bond for public works.

> 3. *Paving failed to allege it duly served the City with a preliminary 20-day notice before filing suit on the bond, as required by sections 3098 and 3252.*

Paving contends that section 3098 (public works) is inapplicable, but if section 3098 does apply, Paving substantially complied with it.

As indicated, before "a claimant may recover on a payment bond on a *public works* project, it must give a notice. The notice may be given either as a 20-day preliminary notice pursuant to section 3098, or as a special notice provided in section 3252, subdivision (b))." (*American Buildings Co. v. Bay Commercial Construction, Inc., supra,* 99 Cal.App.4th at p. 1197, italics added.)

Here, the complaint alleged in pertinent part: "12. Within twenty (20) days after [Paving] first furnished the labor, services and materials referenced herein, [Paving] served a Preliminary Twenty-Day Notice (*Private Work*) in accordance with the provisions of *Section 3097* of the Civil Code by certified mail." (Italics added.) Thus, Paving pled it served a preliminary notice under section 3097 (private work), rather than under section 3098 (public work).

On demurrer, Lincoln asserted, and the trial court found, the action was barred by Paving's failure to give the required preliminary notice. We agree.

■ Paving contends its service of a preliminary 20-day notice pursuant to section 3097 (private work) substantially complied with section 3098 (public work), and it "therefore [was] not required to provide a [special] notice pursuant to [section 3252, subdivision (b)]." The argument is unavailing. The preliminary 20-day notice required by section 3098 (public work) requires written notice "to be given to the contractor, *and the public agency concerned* . . . ." (§ 3098, subd. (a), italics added.)

■ Here, Paving contends it served a preliminary 20-day notice on Moorpark, as the owner of the property and the surety's principal. However, Paving did not allege it also served the *public entity,* i.e., the City, with a preliminary notice, which is what section 3098 requires.

Because Paving failed to allege it duly gave notice to the City in accordance with section 3098, subdivision (a), and Paving has eschewed any reliance on the alternative notice provision of section 3252, subdivision (b), Paving cannot maintain its action against Lincoln to recover on the payment bond on this public works project. (*American Buildings Co. v. Bay Commercial Construction, Inc., supra,* 99 Cal.App.4th at p. 1197.)

4. *Remaining issues not reached.*

In view of the above, it is unnecessary to address whether Paving's lawsuit is barred by the limitations period of section 3249, or any other issues.

## DISPOSITION

The judgment of dismissal is affirmed. The parties shall bear their respective costs on appeal.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied June 13, 2012.